BROWN & ROOT U.S.A., INC., Relator,

v.

The Honorable Louis M. MOORE, Respondent.

No. C14–87–153–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 21, 1987.

Sharon Stagg, Laddie Livingston, Susan Crowley, Don Jackson, Houston, for relator.

J.L. Culpepper, Houston, for respondent.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an original mandamus action by which Relator Brown & Root U.S.A., Inc., seeks relief from orders entered by Judge Louis M. Moore of the 281st District Court of Harris County. The orders compel Mr. Jayme Peper, a claims representative for Relator's compensation carrier, to answer deposition questions and produce witness statements that Relator believes to be either privileged or exempt from discovery. We deny the writ.

On August 6, 1985, Francisco Delgado, an employee of Brown & Root, died from injuries sustained when he was struck by a pipe column support, or "stiff leg," while working with a Brown & Root crew repairing a structural steel bridge on Interstate Highway 10 in Fayette County. On August 8, 1985, Relator's workers' compensation carrier, Highlands Insurance Company, sent Jayme Peper to investigate the accident, interview witnesses and prepare a report. In January 1986 Delgado's wife and children (plaintiffs) filed their Original Petition against Brown & Root U.S.A., Inc., alleging gross negligence and seeking exemplary damages.

During the course of discovery, plaintiffs deposed several of the deceased's co-workers who were witnesses to the fatality. Also deposed pursuant to a subpoena duces tecum was John Lucci, claims supervisor for Highlands Insurance Company, who produced the complete file relating to the deceased's workers' compensation claim, including Jayme Peper's report.

Mr. Peper's deposition was taken on October 13, 1986. He testified as to the procedure he used to investigate the fatality and stated that, according to standard procedure, he conducted part of the investigation to determine the nature of the deceased's workers' compensation claim, and another part to determine Brown & Root's potential liability under a gross negligence claim. Peper answered questions regarding the investigation of the workers' compensation claim, but when plaintiffs' counsel questioned Peper about the facts he learned as a result of his investigation of the accident, Mr. McKissick, an attorney in Brown & Root's legal department, invoked the attorney-client privilege on behalf of his client, Brown & Root. Peper was then advised not to answer any questions regarding the gross negligence investigation and not to answer any questions concerning what the witnesses told Peper during the course of his investigation.

On November 11, 1986, plaintiffs filed a Motion to Compel Answers in the Deposition of Jayme Peper concerning his investigation of the circumstances surrounding Delgado's death. A hearing on this motion was held on January 5, 1987; Judge Moore signed an order on February 20, 1987, compelling Peper to answer the questions and to produce all witness statements taken during his investigation on August 8, 1985. Pursuant to this order Relator received a Notice to Take Oral Deposition Subpoena Duces Tecum of Jayme Peper. In response, Relator filed a Motion to Quash Deposition of Jayme Peper and Motion for Reconsideration in which Relator asked Judge Moore to reconsider his February 20 order and to review the witness statements

*in camera.* A hearing on this motion was held on March 2, 1987, resulting in Judge Moore signing an order granting plaintiffs' Motion to Compel Production of the Witness Statements taken by Jayme Peper. The court stated that "without making a determination as to whether said statements are privileged, finds that the privileges asserted by Brown & Root USA Inc., if any, have been waived by virtue of the relationship between Brown & Root USA Inc. and Highlands Insurance Co."

Relator seeks a writ of mandamus compelling Respondent to vacate the orders of February 20, 1987, and March 2, 1987, directing Peper to appear for the continuation of his deposition and to produce the witness statements taken by him during the course of his August 8, 1985, investigation.

Relator first claims that these matters are protected from discovery under the lawyer-client privilege found in Tex.R.Evid. 503(b), which provides in pertinent part that:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, ... (4) between representatives of the client or between the client and a representative of the client....

Relator asserts that it properly invoked the privilege as to all communications concerning potential gross negligence liability made between Peper and the Brown & Root employees/witnesses because these communications were confidential, were made between representatives of Relator and were made for the purpose of rendering legal services to Relator as provided in Rule 503.

Relator correctly claims that the key issue in asserting the attorney-client privilege lies in the relationship between itself and Jayme Peper. Relator maintains that Jayme Peper wore two hats, one in his role as the claims investigator of the workers' compensation claim on behalf of Highlands Insurance Company, and another in his role as McKissick's agent conducting a separate gross negligence investigation. It was this second role as Brown & Root's representative that Relator insists created the relationship allowing it to assert the privilege.

Rule 503(a)(2) provides that "A representative of the client is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client." Relator cites deposition testimony from Jayme Peper that his investigation of the workers' compensation claim was limited to establishing Delgado's death, determining whether Delgado was acting within the course and scope of his employment at the time of the accident, and ascertaining the proper beneficiaries. Peper stated that after completing this investigation on behalf of Highlands, he conducted an additional investigation of the potential gross negligence claim by taking photographs and talking to the Brown & Root employees who had witnessed the accident. This investigation was done under the supervision of Robert McKissick and as an agent for Brown & Root. He testified that he recorded the witness statements, transcribed the statements and sent them to McKissick, and did not keep any copies of the transcripts in the workers' compensation file compiled for Highlands Insurance Company. At the hearing held on January 5, 1987, McKissick testified that since 1982 Brown & Root has never had a workers' compensation death claim that has not resulted in a gross negligence suit. Therefore, Mr. McKissick requested the compensation carrier, as standard procedure, to conduct an investigation of Brown & Root's potential gross negligence liability in addition to the investigation of the workers' compensation claim. McKissick stated that Peper was acting as his agent for this part of the investigation.

We are not convinced that Peper was acting as Relator's representative for purposes of invoking the attorney-client privilege. The evidence shows that Peper was at all times an employee of Highlands Insurance Company and under the direct su-

pervision and control of John Lucci, claims supervisor for Highlands. During his deposition Peper stated that part of his investigative procedure is to talk with the people who were either directly or indirectly involved with the accident and to prepare a report based on the statements taken during that investigation of the workers' compensation claim. He further stated that it is his standard procedure in the case of a fatality to investigate any potential gross negligence exposure on behalf of any insured, be it Brown & Root or any of Highlands' other clients. Peper had followed this standard procedure for eight years; therefore, he was investigating gross negligence liability for three years before McKissick became employed with Brown & Root. Finally, Peper stated that this particular investigation was done as standard operating procedure with no particular instructions from McKissick, although he and Highlands have a standing order from McKissick and other insureds to investigate potential gross negligence liability in situations such as this.

■ The party asserting a privilege from discovery has the burden to prove the applicability of the particular privilege to the communication in question. *Giffin v. Smith*, 688 S.W.2d 112, 114 (Tex.1985). We hold the requested testimony from Peper as well as the witness statements taken during the August 8, 1985, investigation are not protected from discovery under the attorney-client privilege.

Relator next claims the same communications are exempt from discovery under various provisions of Tex.R.Civ.P. 166b, including the work product, witness statement and "investigative" exemptions found in subdivisions (3)(a), (b), and (d), respectively.

■ Although the transcripts of the witness statements were turned over to McKissick, Peper's testimony indicates they were prepared in the ordinary course of investigating the workers' compensation claim. Further, we do not find, as suggested by Relator, that the plaintiffs' efforts to obtain the witness statements are solely for use as impeachment. There was testimony during the hearings that plaintiffs are unable to discover the basic, underlying facts surrounding the accident because when deposed, some of the witnesses could no longer recall details of the circumstances surrounding the accident. However, two days after the accident these same witnesses made statements to Peper indicating that the normal procedure of applying safety clips to "stiff legs" had not been followed on this occasion. The witness statement exemption of Rule 166b(3)(b) is not applicable.

■ The investigative exemption of Rule 166b(3)(d) is not applicable because there was no lawsuit pending at the time the investigation was conducted. *See Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex.1986). Under Rule 166b(3)(d) the investigative exemption could apply if Relator had good cause to believe a suit would be filed at the time of the investigation by Peper. *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801, 802 (Tex.1986). However, the mere fact that an accident has occurred is not sufficient to shield all post-accident investigations from discovery. *Id.* The burden is on the party resisting discovery to prove that evidence is acquired or developed in anticipation of litigation. *Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 804 (Tex.1986). McKissick claimed that Relator's file was developed in anticipation of a lawsuit because such suits are always filed in death cases. Relator presented no proof to back up this assertion, thereby failing to meet its burden of proof. *Coral Construction Co. v. Presiding Judge of the 48th Judicial District Court of Tarrant County*, 715 S.W.2d 206, 207 (Tex.App.—Fort Worth 1986, no writ).

■ Finally, the work product exemption protects from disclosure specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions or legal theories prepared and assembled in actual anticipation of litigation or for trial. It is not an umbrella for materials assembled in the ordinary course of business. *Evans v. State Farm Mutual Automobile Insurance Co.*, 685 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). For the reasons

already discussed, this exemption does not apply to protect the statements and deposition testimony from discovery.

This court has previously held that "[T]he rule does not prohibit discovery of the documents or communications which were prepared or made prior to the filing of a lawsuit." *Tucker v. Gayle,* 709 S.W.2d 247, 248 (Tex.App.—Houston [14th Dist.] 1986, no writ). The Texas Supreme Court has echoed this court's interpretation and application of the rule by holding that the privilege embodied in Tex.R.Civ.P. 166b(3)(d) is inapplicable where "there was no lawsuit pending at the time the statement was allegedly made." *Robinson,* 711 S.W.2d at 621.

It is clear that documents or communications that are prepared or made in the normal course and scope of investigating an injury or death are not protected from discovery by Rule 166b(3)(d), notwithstanding the fact that this type of injury or death always results in a lawsuit. The rule will make nondiscoverable only those documents or communications that are prepared or made *after* a claim has been asserted or a lawsuit filed.

At the very heart of our system of jurisprudence is truth. The purpose of discovery proceedings is to allow parties to obtain the fullest possible knowledge of issues and facts prior to trial. *West v. Solito,* 563 S.W.2d 240, 243 (Tex.1978). "When relevant and material facts, documents or communications are peculiarly within the knowledge, control or custody of the defendant, his agents or representatives, the right to discovery becomes more important and necessary to our judicial system." *Tucker v. Gayle,* 709 S.W.2d at 249–50.

The trial court has great latitude to order or deny discovery, and its action cannot be set aside unless there is a clear showing of abuse of discretion. *Id.* at 249. Finding no such clear abuse of discretion, we deny Relator's Petition for Writ of Mandamus.