**ARKLA, INC., Oxy USA, Inc., and CanadianOxy Offshore Production Co., Relators,**

**v.**

**The Honorable Ed J. HARRIS, Judge of the 10th Judicial District Court of Galveston County, Texas, Respondent.**

No. B14–92–01211–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 4, 1993.

Steve McConnico, Daniel C. Bitting, Austin, Charles G. King, J.D. Page, Houston, for appellants.

Michael B. Hughes, Galveston, Otis W. Carroll, Tyler, for appellee.

Before MURPHY, CANNON and ROBERT E. MORSE, Jr. (sitting by Designation), JJ.

## OPINION

MURPHY, Justice.

In this original mandamus proceeding, Arkla, Inc. (Arkla), OXY USA, Inc. (Oxy), and CanadianOxy Offshore Production Co. (CanadianOxy), Relators, seek to compel Respondent, the Honorable Ed J. Harris, Judge of the 10th Judicial District Court of Galveston County, Texas, to set aside his order compelling production of documents to the Real Party in Interest, the Atchison, Topeka & Santa Fe Railway Company (Santa Fe), and setting the case for jury trial the week of December 7, 1992. We have previously stayed the order setting the case for trial on December 7, 1992, and now conditionally grant the writ of mandamus.

## FACTUAL BACKGROUND

The underlying lawsuit was filed on July 10, 1991, and alleged the wrongful drainage of minerals over the last fifty years from beneath Santa Fe's railway right-of-way, which crosses nine gas units in Panola

County. In the early 1940's, Arkansas Louisiana Gas Company (ALG) (now Arkla), acquired oil and gas leases covering the minerals surrounding and underlying Santa Fe's right-of-way, but did not obtain any leases from the railroad. ALG created nine gas units, drilled wells and began production. Pursuant to a divestiture order, the leases and wells were transferred to a variety of corporations beginning in approximately 1953. In 1983, they were transferred to Oxy, who has operated the wells to the present. CanadianOxy is alleged to be the successor to various companies that owned and operated the wells from 1953 to 1983.

The wells drilled by ALG produced from formations known as the Upper and Lower Pettit formations. In 1977, Arkla Exploration Company (AEC), a subsidiary of Arkla (now merged back into the parent company), received a farmout of rights to minerals below the Pettit formation and drilled wells in the deeper Cotton Valley formation on the same units.

In 1990, Santa Fe sued AEC, claiming it owned the minerals under its right-of-way and seeking damages for drainage from the deeper Cotton Valley formation. Santa Fe and AEC agreed to settle that suit in May, 1991. Santa Fe then filed this suit in July, 1991, which covers the same land, but alleges drainage from a different level, the shallower Pettit formation.

On June 26, 1992, Santa Fe served its First Set of Interrogatories, Request for Production and Request for Admissions on Relators. Request for Production No. 5 and No. 12 sought title opinions, research or opinion letters, and similar documents relating to the Pettit wells. On August 12, 1992, relators served objections and answers to Santa Fe's discovery. The objections claimed the requested documents invaded the attorney-client and attorney work product privileges. Arkla produced documents on September 30, 1992, but withheld those which it claimed were privileged.

On September 29, 1992, Santa Fe requested and apparently received a trial setting for December 14, 1992. On October 16, 1992, the Honorable Allan Lerner, sitting for the presiding civil judge, granted relators' motion for continuance, but did not set the case for trial.

On October 14, 1992, Santa Fe filed its Motion to Compel and for Sanctions, alleging destruction of title opinions and related documents relevant to this case. Santa Fe attached to its motion excerpts from a deposition of Gary W. Rippetoe, a former employee of AEC, taken in a separate lawsuit in federal court involving the same land. Relators objected to this testimony because they were not parties to that suit, were not represented at the deposition, and Rippetoe violated the attorney-client privilege by testifying about confidential, privileged documents without permission or waiver by the client, his employer. Rippetoe testified that he had been instructed by AEC's general counsel, after this suit was filed, to destroy a file he had compiled called the "Santa Fe Railway file," which contained title opinions and his calculations determining royalties owed on the acreage involved in this suit. He said AEC's general counsel, later identified as Greg Jones, told him, "If it is not in the files, then they can't sue us over it." Rippetoe testified that, with few exceptions, the title opinions in that file recommended that Arkla acquire a lease from Santa Fe because its right-of-way crossed each of the nine units. Much of Rippetoe's deposition testimony was later submitted to the trial court in affidavit form.

On October 29, 1992, Respondent held a hearing on Santa Fe's Motion for Sanctions. At this hearing, Santa Fe's counsel requested, among other sanctions, a December 14, 1992 trial setting. Arkla and Oxy tendered what they claimed were the allegedly destroyed title opinions and other documents to Respondent for an *in camera* inspection and presented both an affidavit from Dwight Johnson, an assistant vice-president of AEC, and live testimony of their in-house counsel, Frank Farrell, that no original documents were destroyed, and that only *copies* of documents in Rippetoe's file were destroyed pursuant to a company-wide document retention plan.

Mr. Farrell also testified that Rippetoe's calculations, which were destroyed, only applied to the production from the wells involved in the suit that had been settled and would not have been relevant to damages for production from Pettit wells. However, he admitted that these calculations were not restricted to any specific formation. Mr. Farrell admitted at the hearing that the title opinions and related documents had previously been exchanged numerous times between various companies who had had interests in the leases, including Cities Services, a separate company. At the conclusion of the hearing, Respondent requested the parties to file briefs.

On November 9, 1992, Respondent held a hearing on Santa Fe's Motion to Compel and Relators' Motion for Protective Order with respect to the privileged documents. Arkla and Oxy again tendered the documents for an *in camera* inspection. Both parties presented Respondent briefs on the privilege issue. On November 11, 1992, Respondent issued the order which is the subject of this proceeding.[1]

Relators argue that Respondent abused his discretion in ordering sanctions for alleged destruction of documents because there was no competent evidence that Arkla destroyed responsive documents, and that any sanctions, particularly the imposition of a December 7, 1992 trial setting, against Oxy and CanadianOxy were an abuse of discretion because they were accused of no wrongdoing. Further, Relators argue that Respondent abused his discretion by imposing sanctions unrelated to the offense, not imposing less stringent sanctions first, and not conducting an *in camera* inspection before ordering production of documents which were claimed to be privileged.

## STANDARD OF REVIEW

A writ of mandamus is appropriate only to correct a "clear abuse of discretion" committed by the trial court when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

With respect to determination of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d at 839. The relator must establish that the trial court could reasonably have reached only one decision. *Johnson*, 700 S.W.2d at 917. Even if the reviewing court would have decided the matter differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* at 918. However, review of a

---

1. Relevant portions of the court's order are as follows:

The court, after examining the pleadings and hearing the evidence and arguments of counsel, is of the opinion and finds:
(i) that Defendant Arkla, Inc. ("Arkla"), abused the discovery process in resisting the inspection and production of certain non-privileged, relevant documents requested by Plaintiff pursuant to Rule 167 of the Texas Rules of Civil Procedure in Plaintiff's First Set of Interrogatories, Request for Admissions and Request for Production;
(ii) Arkla and Defendant Oxy USA Inc. ("Oxy") have both waived the attorney-client privilege with respect to those title opinions dated prior to February 1, 1983, identified in their respective privilege logs ...;
(iii) Oxy is not entitled to claim the attorney-client privilege with respect to those title opinions dated prior to February 1, 1983 ...;
(iv) Arkla and Oxy wholly failed to meet their respective burdens of proof relating to their claims that all of the items listed on their privilege logs ... are exempt from discovery as the work product of an attorney.
IT IS, THEREFORE, ORDERED that:
(1) This case is set for jury trial the week of December 7, 1992;
(2) All of the title opinions, petitions, assignments, affidavits, and internal memoranda identified in the privilege log of Arkla ... are subject to discovery and are to be produced to Plaintiff within three working days of the signing of this Order;
(3) All of the title opinions, petitions, assignments, affidavits, and internal memoranda identified in the privilege log of Oxy ... are subject to discovery and are to be produced to Plaintiff within three working days of the signing of the Order.

trial court's determination of the legal principles controlling its ruling is much less deferential. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer,* 827 S.W.2d at 840. A trial judge's clear failure to apply the law correctly will constitute an abuse of discretion. *Id.*

Rule 215(2)(b) and (3) allow the trial court to impose sanctions for failure to comply with proper discovery requests or for abuse of the discovery process. TEX. R.CIV.P. 215(2)(b), 215(3). The legitimate purposes of discovery sanctions are threefold: 1) to secure compliance with discovery rules; 2) to deter other litigants from similar misconduct; and 3) to punish violators. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). However, discovery sanctions must also be "just." TEX. R.CIV.P. 215(2)(b); *TransAmerican Nat. Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). Two factors determine the limits of the trial court's discretion for sanctions to be just: first, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive. In other words, "the punishment should fit the crime." *Id.*

There are many situations where a party will not have an adequate remedy from a clearly erroneous ruling. *Walker v. Packer,* 827 S.W.2d at 843. In discovery disputes, appeal is not an adequate remedy if, for example: (1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense at trial is severely compromised; or (3) the missing discovery cannot be made part of the appellate record. *Id.*

### TRIAL SETTING

Santa Fe requested a trial setting of December 14, 1992 as a sanction for discovery abuse. The trial court's November 11, 1992 order specifically found that Arkla abused the discovery process and set trial for December 7, 1992. While it is true that a trial court has broad discretion in control

and disposition of its docket, a court of appeals may intervene by way of mandamus as long as great caution is exercised. *Brosseau v. Harless,* 697 S.W.2d 56, 58 (Tex.App.—Dallas 1985, orig. proceeding).

The court may set contested cases for trial with reasonable notice to the parties of not less than forty-five days if it is a first setting; but if a case has been previously set for trial, the court may reset it to a later date on any reasonable notice. TEX. R.CIV.P. 245. In its initial request, Santa Fe asked for a December 14, 1992 trial setting, and provided the appropriate forty-five day notice to relators. However, after relators argued that the December 14 date gave them insufficient time to prepare for trial, a continuance was granted.[2]

Relators also argue that the original trial date of December 14 was only a request, not really a trial setting, and December 7 was the first time the case was actually set for trial. Relators argue that, as a first setting, forty-five days notice was required. The request for a December 14 trial setting as a sanction was made on October 29, 1992, which allowed forty-five days notice. However, according to relators, moving the trial up to December 7 did not allow forty-five days notice. In our opinion, whether considered a first or second setting, Respondent should have only set the case for trial if the setting provided forty-five days notice *or* if it were *later* than the originally requested date of December 14. The December 7 date met neither requirement. We find that Respondent violated the provisions of Rule 245 in setting the trial for December 7.

In addition, we find that the trial setting as a sanction is improper for other reasons. Rule 215 allows sanctions against "the disobedient party." TEX.R.CIV.P. 215(2)(b). Sanctions "should be visited upon the offender." *TransAmerican,* 811 S.W.2d at 917. The trial court found that only Arkla abused the discovery process; no mention was made of any wrongdoing by Oxy or CanadianOxy. The trial setting,

---

**2.** No complaint about the order granting the continuance is before this court.

ordered as a sanction for discovery abuse, clearly affects all defendants.

■ A direct relationship between the offensive conduct and the sanction imposed must exist, and the punishment must fit the crime. *TransAmerican*, 811 S.W.2d at 917. We agree with relators that the December 7 trial setting does not directly relate to the alleged destruction of documents. As relators point out, if Respondent determined relators had destroyed documents, an appropriate sanction would have been an evidentiary presumption, rather than a trial setting. Santa Fe's argument that an early trial is needed to prevent further destruction of documents is unpersuasive. Santa Fe failed to demonstrate that any document destruction was imminent or likely. In addition, Respondent's order was not based on a finding that relators destroyed documents; the order merely finds that Arkla "abused the discovery process in resisting the inspection and production" of documents.

In our opinion, the trial setting was not an appropriate sanction for an abuse of the discovery process. Not only did Respondent fail to follow the rules of civil procedure, the trial setting, as a sanction, punished other defendants who had not been accused of, nor found to have committed, discovery abuse. Setting a case for immediate trial is not directly related to failure to produce requested documents. Therefore, we hold that the December 7 trial setting was an abuse of discretion.

■ In our review of this sanction, we must determine if relators have an adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d at 839. Forcing defendants to an immediate trial of this complex case without adequate preparation, while the parties are in the midst of conducting discovery, would be, in our opinion, a waste of judicial resources. Because we determine that relators' ability to develop their defenses in preparation of trial is severely compromised by a trial setting with less than one month's notice, we find that appeal is not an adequate remedy. *See Walker v. Packer*, 827 S.W.2d at 843.

## PRIVILEGED DOCUMENTS

■ Mandamus is appropriate if the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege, because the party will not have an adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d at 843. In such a case, the appellate court would not be able to cure the trial court's discovery error. *Id.*

■ Evidence is presumed to be discoverable, and the burden is on the party resisting discovery to plead the privilege claimed, and to present evidence supporting the claim. *Loftin v. Martin*, 776 S.W.2d 145, 147 (Tex.1989); TEX.R.CIV.P. 166b(4). If the matter sought to be discovered is privileged, it is not subject to discovery. *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978). Rule 166b(3)(e) exempts from discovery any matter protected from disclosure by privilege. TEX.R.CIV.P. 166b(3)(e).

■ Texas Rule of Civil Evidence 503, covering the attorney-client privilege, applies only to "confidential" communications, which are communications meant to be secret and which are made "for the purpose of facilitating the rendition of professional legal services to the client." TEX.R.CIV.EVID. 503(b). A communication is "confidential" if it is not intended to be disclosed to third persons other than those to whom disclosure is made "in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." TEX.R.CIV.EVID. 503(a)(5). The statements and advice of the attorney to the client are as protected as the communications of the client to the attorney. *Boring & Tunneling Co. of America v. Salazar*, 782 S.W.2d 284, 290 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding).

■ Santa Fe argues that the documents sought in this case are excluded by the crime-fraud exception to the attorney-client privilege. The rules of civil evidence provide for an exception to the attorney-

client privilege "if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." TEX. R.CIV.EVID. 503(d)(1). A party who asserts this exception must first establish a *prima facie* case, showing a violation sufficiently serious to defeat the privilege. *Granada Corp. v. The First Court of Appeals*, 844 S.W.2d 223, 227–28 (1992); *Freeman v. Bianchi*, 820 S.W.2d 853, 862 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). Additionally, there must be a relationship between the document for which the privilege is challenged and the prima facie proof offered. *Granada*, at 227–28.

Here, Santa Fe alleges that the attorney-client privilege does not apply because of a crime or fraud committed by Arkla in destroying documents for which discovery was sought. There was no showing that the services of the attorneys who prepared the title opinions and related documents were sought or obtained with any fraudulent or illegal intent. Furthermore, in our opinion, Santa Fe failed to offer adequate proof supporting its allegation of document destruction that would constitute fraud sufficient to defeat the privilege. Therefore, we find that the crime-fraud exception does not apply in this case.

 Relators also claim that the work product privilege prohibits discovery of the requested documents. Although Rule 166b(3)(a) does provide an exemption for the work product of an attorney, that exemption is limited to the work in preparation for litigation. *Evans v. State Farm Mutual Auto. Ins. Co.*, 685 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The work product privilege in Texas is of continuing duration. *Owens–Corning Fiberglas v. Caldwell*, 818 S.W.2d 749, 751–52 (Tex.1991). This exemption protects from disclosure documents, communications, mental impressions, reports, opinions, and legal theories prepared in actual anticipation of litigation or trial; it is not an umbrella for materials assembled in the ordinary course of business. *Brown & Root U.S.A., Inc. v.*

*Moore*, 731 S.W.2d 137, 140 (Tex.App.—Houston [14th Dist.] 1987, orig. proceeding). In this case, the work product privilege does not apply to those title opinions not prepared as part of the preparation for litigation. Relators failed to establish which, if any, of the requested documents were prepared in connection with this suit or any previous litigation, and have therefore failed their burden of establishing the work product privilege.

 Santa Fe argued, and the trial court found, that any privilege which may have protected the title opinions has been waived. Rule 511 provides that a person waives the privilege "if he voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged." TEX.R.CIV.EVID. 511. If a matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party asserting the privilege has the burden of proving that no waiver occurred. *Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.*, 701 S.W.2d 644, 649 (Tex.1985).

In this case, the documents for which the privilege is claimed consist primarily of title opinions and related memoranda. A title opinion concerning a lease prepared by the attorneys for a prior lessee has been held a privileged communication not subject to discovery, even after the lease had been assigned. *Harrell v. Atlantic Refining Company*, 339 S.W.2d 548, 554 (Tex. Civ.App.—Waco 1960, writ ref'd n.r.e.).

Santa Fe alleges that the title opinions were originally prepared for Arkansas Natural Gas Corporation and/or its subsidiary, Arkansas Louisiana Gas Company. In approximately 1953, after divestiture, the title opinions were transferred with the leases assigned to Arkansas Fuel Oil Corporation. The opinions were then transferred by Arkansas Fuel Oil Corporation to Cities Service Reserves, Inc., then to Cities Service Oil and Gas Corporation, and then to Oxy. Both Farrell and Rippetoe testified that

Arkla obtained the title opinions from Oxy. Santa Fe argues that the title opinions were passed around "like a used deck of cards," thereby waiving any privilege.

Respondent, without inspecting the tendered documents, found the privilege had been waived as to all title opinions prior to February 1, 1983.[3] In our opinion, to determine waiver, the trial court would have had to review the tendered documents to ascertain which had been shared between Oxy and Arkla, whether they were shared before the litigation arose, and whether the documents were shared with other parties. *See Cameron County v. Hinojosa,* 760 S.W.2d 742, 746 (Tex.App.—Corpus Christi 1988, orig. proceeding).

 A party seeking to exclude documents from discovery must specifically plead the particular privilege or immunity claimed, request a hearing on his motion, and produce evidence showing the documents qualify for the privilege as a matter of law. Affidavits or live testimony may be sufficient proof; however, when the claim is based on attorney-client or attorney-work product, the documents themselves may constitute the only, and certainly the best, evidence substantiating the claim of privilege. *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986) (per curiam). The trial court should then determine whether an *in camera* inspection is necessary, and if so, the materials must be segregated and produced to the court. TEX.R.CIV.P. 166b(4); *Peeples v. Fourth Court of Appeals,* 701 S.W.2d 635, 637 (Tex.1985). Once a *prima facie* case for the privilege is established, and the documents are tendered to the trial court, the trial court must conduct an *in camera* inspection of those documents before deciding whether to compel or deny production. *Shell Western E & P, Inc. v. Oliver,* 751 S.W.2d 195, 196 (Tex.App.—Dallas 1988, orig. proceeding). The trial court abuses its discretion in refusing to conduct an *in camera* inspection when such review is critical to evaluation of a privilege claim.

*State v. Lowry,* 802 S.W.2d 669, 673–74 (Tex.1991); *Loftin,* 776 S.W.2d at 148; *Thibodeaux v. Spring Woods Bank,* 757 S.W.2d 856, 860 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Shell Western E & P, Inc.,* 751 S.W.2d at 196.

Relators properly followed the required procedures for claiming the attorney-client privilege, and yet the trial court failed to conduct an *in camera* inspection. The proof and authorities offered concerning application of the attorney-client privilege referred only to title opinions. However, according to the privilege logs prepared by relators, in addition to title opinions, the documents tendered included memos, correspondence and notes. Respondent's order required relators to produce *all* documents on their privilege logs, even though the order specifically states that the privilege does not apply *only* to title opinions prior to February 1, 1983. The privilege logs, which apparently were before the court and were referred to in its order, show that while the great majority of the documents are dated prior to 1983, many documents, including title opinions, are dated afterwards. The documents themselves were the best evidence before the court below to substantiate relators' claim of privilege. Under these facts, the trial court had no choice but to review the alleged privileged documents *in camera. See Weisel Enterprises,* 718 S.W.2d at 58. We find that an *in camera* inspection in this case is critical to the determination of the privilege, and hold that Respondent abused his discretion in failing to conduct an *in camera* inspection of the tendered documents to determine which would be protected by the claimed privilege, and which may have been waived by non-privileged disclosure to third parties.

Therefore, we conditionally grant Relators' petition for writ of mandamus. We have previously stayed the order setting the case for trial on December 7, 1992. Our stay of this proceeding is no longer in effect. We now direct the trial court to vacate its order compelling discovery of the

**3.** No explanation for the February 1, 1983 date is given.

disputed documents, conduct an *in camera* inspection of those documents, and then make a ruling on whether to compel or deny their production. We are confident that the trial court will proceed accordingly, but, if it does not, the writ shall issue.