In re STRATEGIC IMPACT CORPO-
RATION, Kim O. Brasch, and Ma-
ria C. Floudas, Relators.

Nos. 14–06–00727–CV, 14–06–00750–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 10, 2006.

Rehearing Overruled Jan. 23, 2007.

John M. O'Quinn, Tammy Tran, Pete Mai, Houston, Robert W. Higgason, The Woodlands, Lloyd E. Kelley, Robert S. Clark Sr., Douglas Ray York, Hector Garcia Longoria and Jerry McFaddin Young, Houston, for appellants.

William B. Underwood and Scott Alan Weiss, Houston, for appellees.

Panel consists of Chief Justice HEDGES, Justices FOWLER and SEYMORE.

## OPINION

PER CURIAM.

Relators, Strategic Impact Corporation, Kim O. Brasch, and Maria C. Floudas, filed two separate petitions for writ of

mandamus in this Court, claiming that respondent, the Honorable Tony Lindsay, presiding judge of the 280th District Court, Harris County, Texas, abused her discretion by (1) denying relators' motion to review documents in camera; and (2) excluding the testimony of relators' witness, Gregory O'Riordan, from trial. *See* TEX. GOV'T CODE ANN. § 22.221 (Vernon 2004); *see also* TEX.R.APP. P. 52. Relators also filed a motion to stay the trial court proceedings, which we granted by order dated August 24, 2006, pending our disposition of the mandamus petition.[1] For the reasons discussed below, we conditionally grant the writ as to Cause No. 14–06–00727–CV, concerning relators' motion to review documents in camera, and deny the petition for writ of mandamus in Cause No. 14–06–00750–CV, concerning Gregory O'Riordan's testimony.

## BACKGROUND AND PROCEDURAL HISTORY

Kim O. Brasch and Maria C. Floudas, husband and wife, own a consulting firm, Strategic Impact Corporation. Relators entered into a series of agreements with real parties in interest, Big Dog Logistics, Inc., its related entities, its president, Kirk Lane, and its chief executive officer, Daniel Kirk (collectively, "BDLI"). Under the agreements, relators were to assist BDLI in obtaining and maintaining company clients.[2] A dispute arose between the parties, and relators filed suit against BDLI for breach of contract, fraud, breach of fiduciary duty, conspiracy, theft, and declaratory judgment.

## CAUSE NO. 14–06–00727–CV: MOTION TO REVIEW DOCUMENTS IN CAMERA

During the course of the suit, relators anonymously received three separate packages of documents that were illegally obtained from BDLI. Relators brought the documents to their attorney at the time, Jerry Young. While reviewing the documents, Young realized that some were privileged. He advised BDLI's counsel, Bill Underwood, of the delivery of the documents. Scott Weiss, a non-party attorney identified as BDLI's general counsel, but acting as counsel for Deutsche Post Global Mail, Ltd. ("Global Mail"), one of the client companies at issue in the suit, filed an ex parte application for a temporary restraining order, which was heard by the Honorable Grant Dorfman on June 9, 2006.[3]

At the hearing before Judge Dorfman, a portion of which was ex parte, Weiss and Underwood presented the illegally obtained documents—according to Weiss, 256 of them—on a disk. Some of the documents were identified on the record as follows:

(1) one (or more) pertained to a case Weiss had pending in the 11th District Court;

(2) communications between Weiss and Global Mail's general counsel, Maria Gonzalez;

(3) emails concerning the subject case between Underwood and Daniel Kirk;

(4) Weiss's resume;

---

1. Relators filed a motion to stay in each original proceeding; although we granted the emergency motion in the first mandamus filed, the second motion was previously denied. Real parties filed a motion to lift the stay, which was also previously denied.

2. BDLI is involved in the logistics industry. The parties also established a separate company to facilitate the agreements.

3. Weiss filed another application for a TRO on June 9, a copy of which was also filed on behalf of BDLI.

(5) various financial information regarding Kirk Lane;

(6) bank information (unidentified);

(7) salary structure and bonuses (presumably of BDLI);

(8) American Express credit card receipts for Lane, reimbursed by BDLI;

(9) a "fair amount" of documents pertaining to Global Mail;

(10) pricing information and tax information (presumably from BDLI);

(11) a draft transportation service contract between BDLI and Global Mail; and

(12) emails between Weiss and Daniel Kirk regarding a vendor relationship.[4]

At the conclusion of the hearing, Judge Dorfman noted that the documents did, in fact, contain privileged information, such as attorney-client correspondence, draft work product, and pricing information, but acknowledged that relators wanted some of the relevant emails to be produced to them.[5] To that end, Judge Dorfman suggested relators file a motion for in camera review with Judge Lindsay, in whose court the case was pending. On June 23, 2006, a hearing on the TRO was conducted, at which time the relators turned over all the documents to Judge Lindsay. Also, on that date, the trial court granted Young's motion to withdraw as relators' attorney.[6]

Relators subsequently filed a motion requesting the anonymously produced documents be reviewed in camera so that the discoverable—and requested—documents could be produced. In its response to the motion, BDLI claimed the documents were confidential. On August 4, the trial court held a hearing on several motions filed by relators, including the motion to review in camera and a motion to compel. During the hearing, regarding the motion to review, the trial court stated as follows to relators' new counsel:

> COURT: Okay. You understand that the reason that I even have these in-camera is that the Plaintiffs were—should not have ever had them to start with and whether or not they actually stole them or somebody else stole them, I've already informed the prior counsel ... that it all had to be returned and it could not be used. So there's nothing to inspect in-camera unless you want to figure out whether they returned it all or not.
>
> * * * *
>
> COURT: Okay. If the only reason that you know to ask specifically is because you were looking at stolen documents, then I'm sorry, but you still can't ask

---

4. The record reflects that, after looking at the documents as reflected above, Judge Dorfman suggested relators be present at the hearing. He contacted Young, who was unable to attend. Judge Dorfman then contacted relators and awaited their arrival before proceeding further. Relators appeared at the hearing pro se.

5. In its response, BDLI claims relators acknowledged that none of the documents were relevant to their case; however, moments after making that statement, relator Kim Brasch, appearing pro se, affirmatively stated that his attorneys had not reviewed all the documents and that some of the information would be important.

6. Two hearings were conducted on June 23. In the morning, Young's motion to withdraw was granted. That afternoon, the TROs signed by Judge Dorfman and another one signed by Judge Lindsay were heard. Because Young withdrew as relators' counsel during the morning hearing, another attorney represented them during the afternoon hearing. Ultimately, Judge Lindsay granted a temporary injunction on the TRO she had signed, which prohibited relators from revealing, discussing, mailing, or faxing the documents to others.

specifically and the Motion ... is denied.

An order denying the motion to review in camera was signed on August 11, 2006.[7]

In their mandamus petition, relators argue that Judge Lindsay's refusal to conduct an in camera review of the illegally-obtained documents is an abuse of discretion for which they have no adequate remedy by appeal because some of the documents are discoverable and their inability to discover the documents severely compromises their ability to present their claims. They contend that Judge Lindsay denied the motion based only on the conclusion the documents were stolen and, therefore, her ruling effectively creates a new "civil exclusionary rule" that is not supported under Texas law. Real parties argue that the documents were never properly requested and, as to the only potentially proper request, BDLI's objections were sustained.

■■ In civil cases, even illegally obtained evidence may be admissible at trial. *See State v. Taylor,* 721 S.W.2d 541, 551 (Tex.App.-Tyler 1986, writ ref'd n.r.e.) ("Evidence illegally obtained is admissible in civil cases under the common-law rule."); *Sims v. Cosden Oil & Chem. Co.,* 663 S.W.2d 70, 73 (Tex.App.-Eastland 1983, writ ref'd n.r.e.) ("[C]ourts do not concern themselves with the method by which a party to a civil suit secures evidence pertinent and material to the issues involved ... hence evidence which is otherwise admissible may not be excluded because it has been illegally and wrongfully obtained."). And, generally, all relevant evidence that is not privileged is discoverable. *See* Tex.R. Civ. P. 192.3. Because of this, the party resisting discovery has the burden to plead and prove any privilege

claimed. *See Huie v. DeShazo,* 922 S.W.2d 920, 926 (Tex.1996); *Arkla, Inc. v. Harris,* 846 S.W.2d 623, 629 (Tex.App.-Houston [14th Dist.] 1993, no writ). The trial court determines whether an in camera inspection is necessary at that point, and if so, the documents are produced to the court. *See Arkla,* 846 S.W.2d at 631. Once a prima facie case for the privilege is established and the documents are tendered, the trial court "must conduct an in camera inspection of those documents before deciding whether to compel or deny production." *Id.* The trial court abuses its discretion in refusing to conduct an in camera inspection when such review is critical to the evaluation of a privilege claim. *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 223 (Tex.2004); *see In re Ching,* 32 S.W.3d 306, 310, 313 (Tex. App.-Amarillo 2000, orig. proceeding) (examining whether the trial court abused its discretion in failing to conduct an in camera review).

■■ Here, in its response to relators' motion to review in camera, BDLI stated that the documents were confidential communications; however, BDLI did not attach any evidence to the response nor a listing of the privileged nature of the documents. Also, the mandamus record includes an agreed confidentiality order between the parties that facilitates the disclosure of documents deemed to be confidential. Further, although BDLI argues otherwise, the record reflects that the trial court's denial of relators' motion to review the documents in camera was based on the fact the documents were stolen—by whom the record does not show—and not because the documents were determined to be confidential. This

---

7. On August 18, relators filed a "Motion to Reconsider Refusal to Compel Production of Documents," arguing the trial court should reconsider the motion to review. The trial court has apparently not yet ruled on this motion.

is contrary to Texas law and constitutes an abuse of discretion. *See, e.g., Weisel Enters., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986) ("A trial judge, who denies discovery in the absence of evidence substantiating the claim of privilege, abuses his discretion.").[8] Also, in their mandamus petition, relators cite to several discovery requests they claim cover some of the illegally obtained documents and argue that more specific requests are not feasible given they no longer have the documents and can only go by a mere recollection of the documents. The record indicates that some of the documents may be responsive to relators' discovery requests. And, in its response to relators' motion to review the documents in camera, BDLI agreed to produce any non-privileged, responsive documents if they had not been previously provided. Under these circumstances, an in camera review seems the most prudent course.

Relators further contend that some of the documents evidence BDLI's receipt of profits from Global Mail and DHL, client accounts that are directly at issue in the underlying suit, and that the documents show BDLI has withheld and "doctored" records pertinent to disputed client accounts. Thus, because the trial court's denial to examine the documents in camera

may vitiate relators' ability to present their claims, relators do not have an adequate remedy by appeal under these circumstances.[9] *See In re Allstate County Mut. Ins. Co.,* 85 S.W.3d 193, 196 (Tex. 2002) (stating that when a trial court's discovery ruling severely compromises or vitiates a party's ability to present their claims at trial, appeal is not an adequate remedy); *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992).

In sum, because we conclude that the trial court's denial of relators' motion to review documents in camera was an abuse if discretion for which relators do not have an adequate remedy by appeal, we conditionally grant the petition for writ of mandamus in Cause No. 14–06–00727–CV. We are confident Judge Lindsay will comply with this opinion and review the documents at issue to determine which, if any, are discoverable in this case. We turn to Cause No. 14–06–00750–CV.

### CAUSE NO. 14–06–00750:

### TESTIMONY OF GREGORY O'RIORDAN

In Cause No. 14–06–00750–CV, relators argue that the ruling by which the trial court, excluded Gregory O'Riordan's testimony from trial, is an abuse of discre-

---

8. In *Weisel,* the defendant resisted discovery of certain documents, claiming they were privileged as attorney-client and attorney work-product. *See* 718 S.W.2d at 58. The trial judge denied a motion to review the documents in camera, and the supreme court concluded that denial was an abuse of discretion stating, "the trial court had no choice but to review the allegedly privileged documents in camera, prior to its ruling, because it was asked to make an in camera review, and there was no evidence other than the documents themselves which substantiated [defendant's] claims of privilege." *Id.*

9. BDLI asserts that relators have an adequate appellate remedy because relators filed a mo-

tion for the trial court to retain the documents for appellate review. But, whether appeal is an adequate remedy is not solely determined by whether the documents may be available for appellate review. We also note that, although the illegally obtained documents were not submitted for in camera review in this court, the nature of at least some of the documents is disclosed in the record, and the question raised here is one of law; that is, whether Judge Lindsay abused her discretion by refusing to conduct an in camera review because she determined the documents were stolen. *See generally Pope v. Stephenson,* 787 S.W.2d 953, 954 (Tex.1990).

tion because the trial court did so based on the conclusion that relators should have contacted opposing counsel when they failed to appear for an earlier deposition. They argue that real parties did not file a motion to quash that deposition and, therefore, real parties were not entitled to the relief granted by the trial court.

O'Riordan's deposition was noticed for April 13, 2006. When BDLI's counsel did not show up for the scheduled deposition, relators' counsel waited thirty minutes, verified that BDLI had been served with the notice, and then proceeded to take O'Riordan's deposition. Shortly thereafter, BDLI filed a "Motion to Strike Witness" claiming, in part, that it was not properly notified of the deposition, and relators' attorney did not attempt to contact BDLI's counsel before taking the deposition.[10] On May 5, 2006, a hearing was held on BDLI's motion. The trial court stated it would not strike O'Riordan's testimony at that point, but stated it was relators' burden to get another deposition date, "at least by June the 5th," and cautioned relators that the testimony might be struck if they failed to comply. Relators did not contest that date, nor otherwise object to the trial court's ruling.

O'Riordan's deposition was noticed on two occasions thereafter, but both times

O'Riordan's attorney filed a motion to quash, stating O'Riordan was not available. After relators issued a trial subpoena for O'Riordan, BDLI filed a motion to quash the trial subpoena and for a protective order, claiming relators failed to notice O'Riordan's deposition in accordance with trial court's previous ruling. During a hearing conducted on August 4, the trial court noted the discovery deadline had passed and ruled that O'Riordan could not testify at trial.[11]

■ Generally, discovery is largely within the trial court's discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex.2003). Although relators argue the trial court abused its discretion because it excluded O'Riordan's testimony based on relators' failure to contact BDLI's counsel before proceeding with the deposition, the record reflects that the court's ruling was due to the fact the deposition had not been taken as previously ordered and, at that point, the discovery period had ended and trial was scheduled to begin in two weeks. Opposing counsel's failure to appear and whether O'Riordan's April 13, 2006 deposition was properly noticed were issues addressed in the May 5 hearing.[12] At that time, the trial court ruled relators must again notice O'Riordan's deposition by June 5. Relators did not object to this date

---

10. BDLI also objected to pauses in the deposition transcript when the attorneys present would go off the record. Relators responded to BDLI's lack of notice claim by pointing out that BDLI's counsel was incorrectly reading the fax transmission sheet and attached an affidavit from a secretary explaining the transmission form and stating she had, in fact, coordinated the deposition with BDLI's counsel's office prior to noticing the deposition. During the subsequent hearing, BDLI's counsel admitted the notice may not have been received due to an error in his office, and relators' counsel explained the pauses in the deposition transcript.

11. The signed order relators provided in the mandamus record states as follows: "Consistent with the Courts' prior rulings that Gregory O'Riordan may not testify at the trial of this case, [BDLI's] objection to the use of Gregory O'Riordan's deposition as summary judgment evidence is sustained."

12. We reject relators' argument that the trial court abused its discretion because BDLI did not file a motion to quash the April 13 deposition. BDLI filed a motion to strike O'Riordan's testimony immediately after the deposition was taken. The trial court heard the motion on May 5, ordering the deposition to be re-taken by June 5.

nor subsequently move for an extension of time before issuing O'Riordan's trial subpoena.

Because O'Riordan was not deposed within the time allowed by the trial court, his testimony was excluded. This does not equate to an abuse of discretion. Relators also do not establish that similar evidence cannot be obtained from another source. In short, relators fail to establish that the trial court's ruling is an abuse of discretion, and we deny relators' request for mandamus relief regarding its ruling.

## CONCLUSION

In conclusion, in Cause No. 14-06-00727-CV, having determined the trial court's denial of relators' motion to review documents in camera was an abuse of discretion for which relators do not have an adequate remedy by appeal, we conditionally grant the writ of mandamus in that cause and order the trial court to conduct an in camera review of the documents. The writ will issue only if the trial court fails to act in accordance with this opinion. However, because relators fail to establish that the trial court abused its discretion in ruling O'Riordan's testimony is excluded from trial, we deny relators' petition for mandamus in Cause No. 14-06-00750. We are confident the trial court will comply with this opinion. We lift the stay previously granted by this Court.