ACCEPTED
01-15-00304-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/6/2015 12:00:00 AM
CHRISTOPHER PRINE
CLERK

No. _____-CV

IN THE COURT OF APPEALS
FOR THE FIRST OR FOURTEENTH DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/4/2015 6:24 PM
VOID DC
CHRISTOPHER A. PRINE
Clerk

IN RE AMERICAN FISHERIES, INC.

Original Proceeding from the 157th Judicial District Court,
Harris County, Texas
Trial Court Cause Nos. 2013-29749
The Honorable Randy Wilson

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/6/2015 12:00:00 AM
CHRISTOPHER A. PRINE
Clerk

## AMERICAN FISHERIES, INC.'S
## PETITION FOR WRIT OF MANDAMUS

Xenos Yuen
State Bar No. 2223250
xy@yuenlawoffice.com [email]
Andrew Gass
State Bar No. 07747800
ag@yuenlawoffice.com [email]
Diane M. Guillerman
State Bar No. 24012740
dmg@yuenlawoffice.com [email]
SIEGEL, YUEN & HONORE, PLLC
6100 Corporate Drive, Suite 580
Houston, Texas  77036

▪

Telephone:  (713) 541-6256
Fax:          (713) 541-9409

▪

COUNSEL FOR RELATOR,
AMERICAN FISHERIES, INC.

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Relator:** | **American Fisheries, Inc.** |
| **Counsel for Relator:** | **Xenos Yuen, Andrew Gass,**<br>**and Diane Guillerman**<br>Siegel, Yuen & Honore, P.L.L.C.<br>6100 Corporate Drive, Suite 580<br>Houston, Texas  77036 |
| **Respondent:** | **The Honorable Randy Wilson**<br>157th Judicial District Court, Harris County<br>201 Caroline, 11th Floor<br>Houston, Texas 77002 |
| **Real Parties in Interest:** | **National Honey, Inc., d/b/a National**<br>**Commodities Company,**<br>**National Honey, Inc., d/b/a NCC Group, Ltd.,**<br>**Jun Yang, Individually,**<br>**and Lin Yang, Individually** |
| **Counsel for**<br>**Real Parties in Interest:** | **M. H. "Butch" Cersonsky, Jacquelyn McAnelly,**<br>**and Yocel Alonso**<br>Cersonsky, Rosen & Garcia,<br>1770 St. James Place, Suite 150,<br>Houston, Texas  77056 |
| **Real Party-in-Interest** | **Feng Shao,**<br>199 Jujia Qiao Road, Suite 1801<br>Shangahi, China 200135<br>Pro se |

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ……………………. Page i

TABLE OF CONTENTS …………………………………… Page ii

INDEX OF AUTHORITIES ………………………………… Page iv

STATEMENT OF THE CASE ……………………………….. Page 1

STATEMENT OF JURISDICTION ……………………………….. Page 2

RECORD CITATIONS ……………………………………….. Page 3

ISSUES PRESENTED ……………………………………… Page 3

STATEMENT OF FACTS ………………………………… Page 3
    A. The Need for Emergency Relief …………………….. Page 3
    B. Background ……………………………………… Page 5
    C. AFI's Representatives in the United States …………… Page 7
    D. Alleged Activities of Feng Shao and Linghai…………. Page 8
    E. Discovery Shows that Lin Yang is Intimately
    Involved with Linghai……………………………………. Page 10
    F. Attempts to Obtain the Testimony of the Chinese
    Witnesses……………………………………………. Page 11
    G. Depositions of the Chinese Deponents………………. Page 12
        *1. The deposition of Feng Shao is delayed and, due
        to no fault of Plaintiff, cannot be conducted such
        that each side had 7.5 hours of questioning*…….. Page 14
    H. The Deposition Testimony of Feng Shao is Struck
    by the Trial Court……………………………………… Page 17

ARGUMENT AND AUTHORITIES……………………………. Page 18
    A. The Trial Court's Order is a Discovery "Sanction" …… Page 19
    B. Feng Shao is a Crucial Witness to AFI's Ability to
    Defend Against the NHI's Defendants' Counterclaims… Page 22
        *1. Only Feng Shao's testimony regarding
        Linghai can counter testimony of the Yangs*……….. Page 23
        *2. Additional examples showing the necessity of
        Feng Shao's testimony*……………………………….. Page 24
    C. The Trial Court's Order Striking the Entire Testimony
    Was Not Just a "Sanction," It Is a Death Penalty Sanction.. Page 33

D. AFI Has No Adequate Remedy by Appeal……………    Page 35

CONCLUSION …………………………………………………..    Page 36

PRAYER…………………………………………………….    Page 37

VERIFICATION ……………………………………………    Page 38

APPENDIX LIST TO THE PETITION …………………………    Page 40

CERTIFICATE OF SERVICE …………………………………..    Page 42

CERTIFICATE OF COMPLIANCE …………………………….    Page 42

# INDEX OF AUTHORITIES

*Arkla, Inc. v. Harris*, 846 S.W.2d 623, 628 (Tex. App.—Houston [14th Dist.] 1993, no writ), p. 33;

*Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991), p. 33;

*Butan Valley, N.V. v. Smith*, 921 S.W.2d 822, 827 (Tex. App. —Houston [14 Dist.] 1996, no writ), p.19;

*Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex.1992), p. 34, 35;

*In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding), p. 2, 18;

*In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex.1998) (orig. proceeding), p.36;

*In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding), p. 17;

*In re Kings Ridge Homeowners Ass'n, Inc.*, 303 S.W.3d 773, 778 (Tex. App.—Fort Worth 2009), p. 18, 19;

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex.2004), p. 17, 18, 35;

*In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210-11 (Tex.2004) (orig. proceeding), p. 36;

*Rivercenter Assoc. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993), 18;

*Smith v. Nguyen*, 855 S.W.2d 263, 267 (Tex. App.—Houston [1st Dist.] 1993, writ denied), p. 33;

*TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991), p. 34;

*Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding), p.2, 18, 19, 35, 36;

Tex. Gov't Code Ann. § 22.221(a), (b), p. 2;

Tex. R. App. 52, p. 2;

Tex. R. Civ. P. 215.2, p. 20.

## STATEMENT OF THE CASE

On May 17, 2013, American Fisheries, Inc. ("AFI"), Relator and Plaintiff below, filed suit against National Honey, Inc., d/b/a National Commodities Company, National Honey, Inc., d/b/a NCC Group, Ltd. ("NHI"), Jun Yang, individually, and Lin Huang Yang, individually (collectively, the "NHI Defendants"), asserting claims for breach of contract and alter ego, based on NHI's failure to pay for shrimp product delivered to and accepted by NHI.

The NHI Defendants have filed numerous counterclaims against AFI, including common law fraud, fraud by inducement, fraud by non-disclosure, breach of contract, breach of express and implied warranties, breach of loan agreement and usury. In part, the NHI Defendants are alleging that AFI breached the agreement between the parties by selling shrimp through Linghai (USA), Inc., a company established by Feng Shao.

Based upon these allegations, AFI amended its petition to include claims against real party in interest and Defendant below, Feng Shao. The claims filed Mr. Shao include breach of fiduciary duty, tortious interference with existing contract, fraud by non-disclosure and conspiracy. Mr. Shao has filed a general denial in the case. The NHI Defendants have also filed various claims against Feng Shao, which have been severed from this suit, into Cause No. 2013-29749-A. The severed action is currently abated.

The Respondent is the Honorable Randy Wilson ("Respondent"), presiding judge of the 157th Judicial District Court, Harris County, Texas.  On March 24, 2015, Respondent signed an order that, in part, struck the entire deposition testimony of Feng Shao. App. Tab A.  Plaintiff filed a motion to reconsider the trial court's order striking Mr. Shao's deposition testimony, and the trial court denied the motion to reconsider on April 2, 2015.  App. Tab B.  Relator AFI seeks mandamus relief from that portion of Respondent's March 24, 2015 Order striking the deposition testimony of Feng Shao and Respondent's subsequent order denying Relator's motion to reconsider its decision.

Because trial in this case is scheduled to begin on April 6, 2015, Relator is also filing a motion for emergency relief, asking this Court to stay the trial in this matter until the petition for mandamus can be decided.

## STATEMENT OF JURISDICTION

By statute, this Court has jurisdiction to issue writs of mandamus as to any judge of the district or county courts within its district.  Tex. Gov't Code Ann. § 22.221(a), (b); Tex. R. App. 52.  Further, this Court has jurisdiction to review a trial court's discovery order where there is an abuse of discretion and there is no adequate remedy by appeal; both circumstances apply here, as will be shown.  *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

2

## RECORD CITATIONS

American Fisheries, Inc. has filed an Appendix with this Petition for Writ of Mandamus. All references to documents attached are denoted as "App. Tab." The executed verification for the Petition for Writ of Mandamus is being filed as a separate document.

## ISSUES PRESENTED

The trial court abused its discretion by granting the real-parties-in-interest's, National Honey, Inc., Jun Yang, and Lin Huang Yang, motion to strike the entire deposition testimony of Feng Shao, a party to the suit.

By striking the entire deposition, the trial court imposed a discovery "sanction" against Relator, denying Relator the opportunity to present its defenses against claims filed by real-parties-in-interest, National Honey, Inc., Jun Yang, and Lin Huang Yang. Further, the trial court's ruling leaves the parties with the proverbial "empty chair," allowing the real-parties-in-interest to avoid paying what is rightly owed to Relator.

## I. STATEMENT OF FACTS

### A. The Need for Emergency Relief.

On March 6, 2015, the NHI Defendants filed a motion to strike the deposition testimony of AFI's witnesses, Chinese residents, who are critical to the

presentation of Relator's case.[1]  The depositions were conducted in Hong Kong over the course of a week, beginning on February 10, 2015.  A hearing was held on the motion to strike on March 23, 2015 and, in part, the trial court orally granted the motion as to one of the witnesses, Feng Shao, and signed an order to that effect on March 25, 2015.  Mr. Shao is a party to the suit.

At the end of the hearing on the motion to strike, AFI requested the trial court reconsider its ruling as to Mr. Shao because of the importance of his testimony to AFI's case.  Respondent, Judge Wilson, requested AFI file a motion to reconsider.

AFI filed its motion to reconsider on March 27, 2015, and filed a request for an emergency hearing.  There was no response by the trial court to AFI's request for emergency relief and instead, AFI's motion to reconsider was not addressed by the trial court until following pretrial conference, held on April 2, 2015.  Trial in this case is set to begin on April 6, 2015.  Thus, AFI files this mandamus petition literally on the "eve" of trial.  AFI is also filing a motion for emergency relief requesting the appellate court grant a stay of the trial proceedings until AFI's mandamus petition can be fully addressed by the appellate court.

**B. Background.**

This lawsuit began simply enough as a breach of contract case.  Relator,

---

[1] Relator filed a response to Defendants' motion, as subsequently discussed.

AFI, and Real-Party-in-Interest, National Honey, Inc., d/b/a National Commodities Company ("NHI"), entered into an "Agreement of Cooperation" (the "Agreement") on June 1, 2011, pertaining to the sale of shrimp between the parties. *See* Agreement of Cooperation, attached hereto as <u>App. Tab 1</u>. As provided by the Agreement, AFI delivered seventy-four (74) containers of shrimp; however, NHI paid for only a portion of the containers delivered. This fact is not actually disputed. On May 17, 2013, AFI filed this suit to collect the amount owed for the shrimp. AFI also filed claims against NHI's president, Jun Yang, and his wife, NHI's sole shareholder, Lin Huang Yang based upon their use of funds derived from the shrimp sales to pay criminal fines and restitution assessed against Jun Yang for illegally smuggling honey.

On March 12, 2013, Jun Yang entered into a plea agreement in the United States District Court for the Northern District of Illinois, Eastern Division, in which he pleaded guilty to illegally smuggling honey into the United States. He also admitted that he and his company, National Commodities Company, "caused the formation of at least three companies, including CCM Foods, Inc.; Kota Imports, Inc.; and Madu Jaya, Inc.," to facilitate his smuggling efforts.[2] *See* Plea Agreement, attached hereto as <u>App. Tab 2</u>.

---

[2] Indeed, in the Government's Position Paper as to Sentencing Factors, the Government described Mr. Yang as "one of the largest and most successful criminal transshippers ever prosecuted in U.S. history." *See* Government's Position Paper as to Sentencing Factors, at p. 5, attached hereto as <u>App. Tab. 3</u>.

Despite having pleaded guilty to forming these companies, in 2014, Jun Yang and the other NHI Defendants filed claims in the subject suit against Feng Shao, Weiping Ding, Sizhong Ge (a/k/a George Ge), Jiahua Ma (a/k/a Mark Ma), representatives of AFI, KOTA Imports, Inc., Madu Jaya, Inc., CCM Foods, Inc. ("CCM"), YZ Marine, Inc. (collectively, "third party defendants") and AFI, asserting violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") and causes of action for civil conspiracy, breach of warranty "as to honey," common law fraud "as to honey," and fraud by non-disclosure/concealment "as to honey." *See* Third-Party Plaintiffs [sic] National Honey, Inc. and Jun Yang's Second Amended Petition & Requests for Disclosure and Third Amended Counterclaim of National Honey, Inc. against American Fisheries, Inc. (hereinafter "Third Party Petition"), attached hereto as <u>App. Tab 4</u>. As is expressly stated in these claims, Defendants allege these causes of action in reference to the illegal transshipping of honey. In part, they allege AFI's involvement in the "honey" based upon the activities of Feng Shao.

The NHI Defendants also asserted claims against AFI for breach of contract, civil conspiracy, breach of warranty "as to shrimp," common law fraud "as to shrimp," and fraud by non-disclosure/concealment "as to shrimp." *Id.* All of these counterclaims assert allegations against AFI regarding the quality of the shrimp product, its weight, price and the agreement of the parties. In all, the NHI

Defendants' are seeking over $5 million in damages.

**C. AFI's Representatives in the United States.**

Feng Shao, Weiping Ding, Jiahua Ma, and Sizhong Ge, worked on behalf of AFI in the United States, supporting the sales of shrimp. *See* Deposition testimony excerpts of Zongdao Shao, p. 42-44, attached hereto as <u>App. Tab 5</u>. They were essentially the "sales" force of AFI and had contact with AFI's customers. Almost every encounter with the NHI Defendants occurred through these individuals. In fact, Lin Yang described Feng Shao as her "friend," stating they were "very close." *See* Deposition testimony excerpts of Lin Huang Yang, dated August 4, 2014, 90:12-20, attached hereto <u>App. Tab 6</u>.

Though these third party defendants represented AFI here in the United States, they were employed by a company called Shanghai Lingpu Aquatic Products Company ("SLAP"). *See* <u>App. Tab 5</u>, at 42:9-18, 43:2-6. AFI and SLAP entered into a joint venture agreement in 2005, in which SLAP agreed to dispatch its employees to the United States to work on behalf of AFI and to pay their salaries. *Id.* at 38:4-8, pp. 41-43. In exchange, SLAP received a portion of the profits from the shrimp sales. *Id.* at 45:2-4. These individuals came to the United States on a rotating basis because none had a work visa. *Id.*

In the agreement between AFI and SLAP, Feng Shao was appointed as the temporary director of AFI. *Id.* Although he was named as the "director," the

7

shareholders of AFI, represented by Du Faming and Zongdao Shao, were to actually control the company. *Id.* at 49-50.

In addition to handling all of AFI's shrimp sales, these individuals had complete access to AFI's emails, bank statements, finances and other documents. They were an integral part of the dealings between AFI and the NHI Defendants and, in fact, are the only individuals who have direct knowledge of the actual sales between the companies and can testify on AFI's behalf regarding many of the issues and allegations asserted by the NHI Defendants in the suit. Again, though, these individuals were to handle AFI's sales as instructed to by Zongdao Shao – as the representative for the board of shareholders—and only for the benefit of AFI. *Id.* at 42:13-18.

### D. Alleged Activities of Feng Shao and Linghai.

This suit was initially set for trial on September 11, 2014. However, the NHI Defendants filed a motion for continuance on August 22nd, claiming a continuance was necessary due in part to the discovery of a company called Linghai (USA) Inc. ("Linghai"). *See* Emergency Motion for Trial Continuance, attached hereto as App. Tab 7. According to the NHI Defendants' allegations, Linghai and AFI were "related" companies and AFI was selling products through Linghai. *Id.* at pp. 4-6, 8, 10. As the NHI Defendants described it, "AFI was apparently using a ruse, selling product through another company, Linghai, USA."

8

*Id.* at p. 10, ¶ 18.

The NHI Defendants also asserted that the "revelation" of AFI product being sold through Linghai necessitated additional discovery, such as Linghai's transactions with AFI and Linghai's customers.[3] *Id.* at p. 8. The Court granted the Defendants' motion for continuance and trial was rescheduled for December 2, 2014.

Following the first continuance, a great deal of discovery was conducted by the NHI Defendants regarding Linghai. Some of that discovery reflects that Feng Shao *was* closely associated with Linghai. For example, he is shown as the vice president of Linghai on a number of documents, including a commercial sublease between Linghai and National Honey, Inc. whereby Linghai subleased office space from the NHI Defendants from June 16, 2007 through March of 2013. *See* Commercial Sublease Agreements, dated March 1, 2010 and June 16, 2007, attached hereto as <u>App. Tab 8</u>. Feng Shao is also listed as the president of Linghai on its bank account and signed Linghai checks. In Lin Yang's possession were other, various documents regarding Linghai that also showed the close connection between Linghai and Feng Shao, such as W-2 forms reflecting that he was an employee of Linghai and various financial statements and tax returns.

---

[3] In their motion for continuance and other motions filed at that time by the NHI Defendants, they often referred to discovering Linghai as a surprise and a shock. Imagine Plaintiff's surprise when, during the emergency telephonic hearing on their motion, Defendants' counsel acknowledged that Defendant Lin HuangYang, Jun Yang's wife, had been employed by Linghai!

Based upon this evidence, much of which was not revealed to AFI until the second trial setting was only a short time away, AFI filed claims against Feng Shao for breach of fiduciary duty, tortious interference with contract, conspiracy, and fraud by non-disclosure. *See* Plaintiff's Original Petition against Feng Shao and Sixth Amended Petition against Defendants National Honey, Lin Huang Yang, and Jun Yang, attached hereto as App. Tab 9.

**E. Discovery shows that Lin Yang is Intimately Involved with Linghai.**

With so many Linghai documents in Lin Yang's possession, AFI has been playing catch-up as to evidence regarding Linghai. Prior to the deposition of Feng Shao, based upon the Linghai documents produced by the NHI Defendants, AFI was able to surmise that Linghai was established as a way to comply with the United States government's requirements to obtain an L-1 visa for Feng Shao. Indeed, Feng Shao testified that this was the purpose behind Linghai. App. Tab 9, at 26:20-24. However, given his limited proficiency in English and his unfamiliarity with American business practices, it seemed highly unlikely he was able to accomplish anything related to Linghai by himself. Feng Shao confirmed the suspicions of AFI's counsel when he testified that the Linghai documents were drafted by the Yangs and Linghai was the brainchild of Lin Yang. *Id.* at pp. 39-41:7-11.

Given the fact that Linghai (1) subleased office space from NHI; (2) used the

same attorney as Lin Yang; (3) used the same accountant as NHI and Lin Yang; (4) employed Lin Yang and Kathi Cheung, Lin Yang's assistant at NHI; and (5) Lin Yang was in possession of numerous financial and other business documents regarding Linghai, AFI concluded that Lin Yang, and possibly Jun Yang, was intimately involved with the establishment and operation of Linghai and had, in all likelihood, concocted the whole scheme on behalf of Feng Shao, similar to the formation of the shell "honey" companies, Kota Imports, CCM Foods, and Madu Jaya. Lin Yang denies that this is true. Therefore, the only evidence available to directly prove this is the testimony of Feng Shao.

**F. Attempts to Obtain the Testimony of the Chinese Witnesses.**

As the information of Linghai became known to AFI and additional discovery was conducted, the importance of the testimony of the Chinese individuals became more important. AFI fought to take the depositions of these individuals against strenuous and numerous objections asserted by the NHI Defendants. Indeed, the necessity of obtaining the depositions of these witnesses was an issue brought before the trial court on several occasions.

Given the relatively short timeline of the approaching December trial and the difficulty of obtaining deposition testimony of a Chinese resident for use in a United States legal proceeding, the trial court ultimately agreed to allow AFI to obtain the deposition testimony of the Chinese residents through depositions on

11

written questions.

AFI obtained the written question deposition testimony from Zongdao Shao, as the representative of AFI's shareholders, and from Sizhong Ge and Jiahua Ma, but could not contact Feng Shao at that time.[4] Unfortunately, because of a small number of slight variations in the questions submitted to the NHI Defendants and the questions answered by the Chinese deponents, which AFI was not aware of until brought to its attention by the NHI Defendants and attributes to translations, the trial court struck the *entirety* of the depositions on written questions. At that point, the only witness left to testify on AFI's behalf was Zhengqin Leng, a/k/a Angela Leng, AFI's corporate representative who also resides in China. Ms. Leng was not directly involved with the sales of shrimp in the United States.

Because the trial court decided to strike all of the deposition on written questions and the NHI Defendants produced thousands of pages of Linghai documents so shortly before the scheduled trial, AFI moved for a continuance on November 20, 2014. The trial court granted the continuance and trial was reset for April 6, 2015. Importantly, the continuance allowed AFI to obtain the deposition testimony of the Chinese witnesses.

**G. Depositions of the Chinese Deponents**

Ultimately, again against the multiple objections asserted by the NHI

---

[4] Feng Shao left AFI in 2012 and was no longer under its "control." *See* Deposition testimony of Feng Shao, dated February 13, 2015, 122:18-25, attached hereto as <u>App. Tab 10</u>.

Defendants,[5] on January 17, 2015, the trial court sent an email to the parties stating the oral depositions of Zongdao Shao, Feng Shao, Jiahua (Mark) Ma and Sizhong (George) Ge could be conducted in Hong Kong and setting forth the conditions under which they were to be conducted, including stating that the depositions would be six hours "per side on the record, unless the witness requires an interpreter, in which case the deposition will be 7.5 hours." *See* Email dated January 17, 2015, from Judge Randy Wilson, attached hereto as <u>App. Tab 11</u>.[6]

AFI then noticed the depositions in accordance with the trial court's email. At great expense, AFI arranged to have the depositions conducted at the Hong Kong Arbitration Center, to have a Texas certified court reporter present,[7] a licensed interpreter, and also arranged to have a Hong Kong notary available to give the oath to the witnesses. Because of the cost of the notary,[8] AFI requested its Chinese corporate representative communicate to the witnesses that they should be present on the first day of the deposition to be sworn in by the Hong Kong

---

[5] In the interest of time, Plaintiff will not list all of the motions and responses filed by the parties regarding obtaining these depositions; however, should the appellate court deem it necessary, AFI would be happy to supplement this petition with each of the documents filed regarding obtaining these Chinese depositions.

[6] Although it states in the email the trial court would subsequently formalize the contents, an order was not issued.

[7] Because of all the objections raised by the NHI Defendants prior to the trial court's email, AFI wanted to take no chances as to the certification of the court reporter.

[8] *See* Merrill Corporation's Cost Sheet, reflecting cost of notary as $700/per hour, and invoice issued to Siegel, Yuen & Honore, PLLC, both attached hereto as <u>App. Tab 12</u>.

notary. She was unable to contact Sizhong Ge and Jiahua Ma, however. In his email, the Respondent also stated the depositions should be "double captioned in both the shrimp and honey litigation," and the questioning would be done on both matters. *Id.*

The deposition of Zongdao Shao began on February 10, 2015. Feng Shao attended the deposition of Zongdao Shao, as a party to the suit, over the vigorous and lengthy objections asserted daily by the NHI Defendants. On the second day of questioning, Mr. Liao, Feng Shao's Chinese attorney also attended the deposition. Mr. Ge and Mr. Ma never appeared at the depositions.

### 1. The deposition of Feng Shao is delayed and, due to no fault of Plaintiff, cannot be conducted such that each side had 7.5 hours of questioning.

Zongdao Shao's deposition was very contentious and time consuming. Although Feng Shao was originally scheduled to be deposed on February 12 and 13, 2015, at 9:00 a.m., because the deposition of Zongdao Shao went much longer than anticipated, Feng Shao's deposition was delayed until Friday, February 13, at approximately 1:00 p.m., following the ultimate suspension by the NHI Defendants of Zongdao Shao's deposition.[9] At that point it was clear to everyone that Feng

---

[9] When the deposition was suspended, AFI was left without the opportunity to pose any redirect questions to Zongdao Shao. Also, on the first day of questioning of Zongdao Shao both sides knew the deposition would spillover into the deposition time for Feng Shao and both agreed it was permissible. App. Tab 5, at 135:5-25, 136:1-14. Unfortunately, it created an unforeseen problem when the parties learned that the witnesses were in Hong Kong on a limited type visa.

14

Shao's oral deposition would not be completed that day if each party were to use the full seven and one-half hours of interrogation stated by the trial court in its email.

Mr. Liao advised the parties that Feng Shao's visitor permit to Hong Kong was about to expire on Saturday, February 14, 2015, and Feng Shao had to catch a plane to return to Shanghai for the Chinese New Year. Prior to that time, AFI's counsel had no knowledge as to when Feng Shao had to return to Hong Kong. Through the interpreter, Mr. Liao advised as follows:

THE INTERPRETER: Mr. Liao said:

According to Hong Kong law, since Feng Shao entered into Hong Kong with the Hong Kong and Macao entry permit and he's only allowed to stay in Hong Kong for seven days, if his stay is exceeding seven days, which means he will face a criminal prosecution, if that happens, which means he will face the risk of never being able to come to Hong Kong again.

*See* App. Tab 10, Deposition of Feng Shao, at 8:16-23.

Feng Shao stated off the record that, due to the shortage of flights and other transportation facilities just days before the eve of the Chinese New Year, he must catch his scheduled flight the next day, Saturday, to leave Hong Kong to make it back to his family and his attorney strongly advised Feng Shao to depart Hong Kong on schedule. At Mr. Liao's suggestion, Feng Shao voluntarily stayed late into the night on Friday to be deposed.

15

Mr. Liao suggested that each side would be allowed to question Feng Shao for two hours. If there was time left, then each party would have the same amount of time to do additional questioning, splitting the time equally. *See id.* at 9-11. AFI complied and questioned Feng Shao for two hours and forty-three minutes, stopping at 5:45 p.m.[10] He then passed the witness. *Id.* at 100:1-6. The NHI Defendants' counsel, after making a lengthy barrage of objections, then took a one and one-half hour break. *Id.* at 101:8. She began her questioning at approximately 7:30 p.m. *Id.* at 108:2. Her questioning lasted until approximately 10:45 p.m. *Id.* at 190-98. Thus, the NHI Defendants' counsel had a total of two hours and forty-two minutes of examination time, on the record. However, at that point, it was very late and the Hong Kong Arbitration Center personnel indicated they needed to leave. The parties and the witness departed the facility at that time. *Id.*

Interestingly, though Linghai is an important issue in this case, due only to the efforts of the NHI Defendants, their counsel failed to ask *any* questions of Feng Shao regarding Linghai.

**H. The Deposition Testimony of Feng Shao is Struck by the Trial Court.**

On March 6, the NHI Defendants' filed their Motion to Strike Deposition Testimony of Zong Dao (sic) Shao and Feng Shao and for costs to Attend the

---

[10] Plaintiff's counsel asked Defendants' counsel if she would like to ask her questions first, but she did not respond. *See* <u>App. Tab 10</u>, at 14:18-19. However, when requesting the trial court strike Feng Shao's deposition, she later complained to the trial court that she was made to ask questions of Feng Shao late into the night.

Deposition of George Ge and Mark Ma, attached hereto as App. Tab 13 (without exhibits). As to the Feng Shao deposition, the NHI Defendants argued that his deposition should be stricken due to violations of the trial court's order regarding permitted questioning time. *Id.* at pp. 13-15. AFI filed its Response to Defendants' Motion to Strike Deposition Testimony and For Costs, on March 19, 2015 and references and incorporates its response into this mandamus petition for all purposes. *See* Plaintiff's Response to Defendants' Motion to Strike Deposition Testimony and for Costs, attached hereto as App. Tab 14.

After a hearing held on March 23, 2015, the trial court orally rendered its ruling, striking the entire deposition testimony of Feng Shao, and signed a written order on March 24, 2015.[11] *See* App. Tab A, Order dated March 24, 2015.

## II.   ARGUMENT AND AUTHORITIES

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.

---

[11] The NHI Defendants also argued that the deposition testimony should be struck because of an alleged improper communication with the witness during the deposition Although the trial court's order does not state the reason Feng Shao's deposition was struck, both parties agree that the trial court indicated during the March 23, 2015, hearing that the motion to strike Feng Shao was due to the NHI Defendants' argument regarding time limitations See Defendants' Response to Plaintiff's Emergency Motion to Reconsider the Court's Order to Strike Feng Shao's Deposition Testimony, attached hereto as App. Tab 15.

proceeding); *In re Kings Ridge Homeowners Ass'n, Inc.*, 303 S.W.3d 773, 778 (Tex. App.—Fort Worth 2009); *see also In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). While mandamus is a legal remedy, it is controlled by equitable principles. *Rivercenter Assoc. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993).

A clear abuse of discretion warranting correction by mandamus occurs when a court's decision is without basis or guiding principles of law. *In re Kings Ridge Homeowners Ass'n, Inc.*, 303 S.W.3d at 778. With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839-40. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* at 840. However, with respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. *Id.* A trial court has no "discretion" in determining what the law is or applying the law to the facts. *Id.* A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and will result in appellate reversal by extraordinary writ. *Id.*

Further, AFI has no adequate remedy by appeal from the trial court's order striking the deposition testimony of Feng Shao. *See In re Prudential*, 148 S.W.3d at 135-36 (holding that, in order to be entitled to relief by writ of mandamus,

relator "must meet two requirements [:][o]ne is to show that the trial court clearly abused its discretion .... [t]he other ... is to show that it has no adequate remedy by appeal"). AFI has no opportunity to defend against many of the claims made by the NHI Defendants without the testimony of Feng Shao. Further, the testimony in defense of the NHI Defendants' allegations cannot be brought through the testimony of anyone other than Feng Shao.

Generally, mandamus actions regarding discovery orders have concerned those rulings by the trial court that are expressly requested as discovery "sanctions"; however, that is not always the case. *See generally In re Kings Ridge Homeowners Ass'n, Inc.*, 303 S.W.3d at 785 (holding the trial court abused its discretion by striking the relator's expert testimony and granting the petition for a writ of mandamus).[12] Here, though the NHI Defendants did not request the testimony of Feng Shao be struck as a discovery "sanction" against AFI, it is nevertheless a "sanction," as shown below. In imposing this sanction, the trial court acted without reference to any guiding rules and principles and rendered an unreasonable ruling. *See Butan Valley, N.V. v. Smith*, 921 S.W.2d 822, 827 (Tex. App. —Houston [14 Dist.] 1996, no writ).

## A. The Trial Court's Order is a Discovery "Sanction."

---

[12] By striking the entire deposition testimony of Feng Shao, the trial court is also eliminating Feng Shao' response to the claims filed against him by AFI.

In their response to Plaintiff's motion to reconsider striking the deposition testimony of Feng Shao, the NHI Defendants argue that the trial court's order is not a discovery "sanction" because they did not request the testimony be struck as a "sanction" and the trial court's order is merely an "evidentiary ruling." App. Tab 15, p.3. However, whether requested as a discovery "sanction" or not, the trial court's order is in fact a sanction.

Sanctions are generally addressed under Texas Rule of Civil Procedure 215; permissible discovery "sanctions" are set out in Rule 215.2. Specifically, in Rule 215.2(4), it states the trial court may issue an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibit [that party] from introducing designated matters in evidence." Tex. R. Civ. P. 215.2(4). By striking the entire deposition of Feng Shao, the trial court has effectively prohibited AFI from introducing any of the testimony of Feng Shao in defense of the counterclaims asserted by the NHI Defendants. Had the trial court's order been merely an "evidentiary ruling," the entire deposition would not have been struck. Consequently, the trial court's order is a "sanction." However, the trial court made no findings in its order regarding the necessity or the fact that lesser sanctions were unavailable. Moreover, AFI is not the "disobedient party."

Indeed, AFI's counsel, suggested alternatives to the announcement that Feng Shao had to leave on Saturday. After learning that Feng Shao would need to leave,

AFI's counsel suggested that, if they were unable to finish the deposition on Friday, perhaps they could assure Feng Shao that he would be able to return back to China with just "one or two days overstay." App. Tab 10, at 9:3-6. But, in response, Mr. Liao stated he would like each side to have two hours to question the witness and if Feng Shao was "allowed to come back again," each side could have an additional two hours. *Id.* at 9:9-16. AFI's counsel also asked Feng Shao's attorney if it would be possible, should the deposition not be completed, whether it could be finished telephonically, but Mr. Liao did not directly respond to that request. *Id.* at 16:21-25, 17:1-6.

The NHI Defendants, in their motion to strike, did not properly present the facts of the deposition to the trial court. Instead, the NHI Defendants' motion implies that AFI's counsel, Xenos Yuen, was controlling the circumstances of the deposition. Regardless, as shown above, the trial court's order deprives AFI of the opportunity to present this critical evidence in response to the claims asserted against it by the NHI Defendants.

AFI is an innocent party in this regard – there are no discovery "abuses" to sanction. Feng Shao was advised by his Chinese attorney to leave Hong Kong pursuant to his limited permit to visit Hong Kong. Because of the extended questioning of Zongdao Shao, Feng Shao's deposition was delayed. Further, Feng

Shao is not under the control of AFI and AFI could not insist that he make himself available for the time ordered by the Court for the deposition.

As a compromise and an attempt to obtain some testimony, a proposal was made that each side would receive two hours initially and would share equally in any additional time the witness could stay.

AFI questioned Feng Shao for approximately two hours and fifty-five minutes. The NHI Defendants questioned Feng Shao for approximately the same amount of time. Just as the NHI Defendants were unable to finish their questioning of Feng Shao, AFI was similarly deprived of its opportunity to question Feng Shao for the full allotted time as well.

Because the trial court imposed a sanction against AFI, striking the entire deposition testimony of a party to the suit, and one that is critical to defend AFI's claims and defenses, the trial court abused its discretion. This is particularly true because AFI is a not responsible for the actions of Feng Shao regarding the deposition and does not have control of Feng Shao. Thus, AFI has lost the testimony of this critical party without any blame. This is not a "just" sanction and it is an abuse of discretion. *See* Tex. R. Civ. P. 215.2(b); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003).

### B. Feng Shao is a Crucial Witness to AFI's Ability to Defend Against the NHI's Defendants' Counterclaims.

22

The trial court abused its discretion when it struck the entire deposition testimony of Feng Shao. As shown above, Feng Shao was involved in almost every aspect of AFI's sales of shrimp. He was a primary and trusted contact for the NHI Defendants. Many of their allegations involve the alleged activities of Feng Shao, as well as his communications regarding price, weight, delivery and the quality of the shrimp product.

The NHI Defendants are claiming they did not pay AFI's invoices following delivery of the first two containers of shrimp because the invoices were incorrect. *See* App. Tab 6, at 101:1-17, 21-25. Following those invoices, Lin Yang claims NHI paid some of the invoices on the condition that "Feng Shao is going to correct it." *Id.* at 102:1-12. This is clearly an allegation that only Feng Shao can address. And, in fact, Feng Shao stated that he did review the invoices during the time period that she claims he was unable to address her complaint. *See* App. Tab 10, 145-147.

### 1. Only Feng Shao's testimony regarding Linghai can counter testimony of the Yangs.

Importantly, Feng Shao is the only witness other than the Defendants, Lin Yang and Jun Yang, who can testify on behalf of AFI as to the establishment and operation of Linghai. Indeed, Linghai has become a major issue in the case, consuming many of the 142 pages of the NHI Defendants' exhibit list. Moreover, the NHI Defendants have alleged that Zongdao Shao, AFI's shareholder's

representative was involved with Linghai and are attempting to tie AFI to Linghai through him now also.

Although Linghai is a major aspect of the NHI Defendants' counterclaims, due to the trial court's order striking the *entire* deposition testimony of Feng Shao, AFI has effectively no witnesses with any direct knowledge of Linghai's purpose and operations and AFI is not able to defend itself against these allegations.

## 2. *Additional examples showing the necessity of Feng Shao's testimony.*

For the convenience of the Court, the following excerpts are presented in somewhat truncated form to show the necessity of Feng Shao's testimony:

(1) As to claims regarding Linghai, such as the claim that Kathy Cheung was an employee of Linghai and not NHI:

MR. YUEN: So are you saying that Kathie Cheung actually worked for Huang Lin and Jun Yang? Is that what you're saying?
A. Yes.
***
A. It was Huang Lin's idea.
Q. SO during the time you're making the application for the L visa, did you ever ask Kathie Cheung to do something for the office of Linghai (USA)?
A. No, never.

App. Tab 10, p. 43:1-13;

MR. YUEN: Did Marina Ma actually work as a sales manager for Linghai (USA)?
A. Well, no, she didn't exactly work for us. Initially, because she was in California… but in the end she didn't really do work for us.

*Id.* at p. 42:20-25;

24

MR. YUEN: So if Lin Huang work under you, why would Lin Yang have a bigger office than you?

A. She didn't work for me.

*Id.* at p. p. 47:7-9;

MR.YUEN: Except that your name is used as a VP for someone that you never have anyone work for you, correct?

A. Yes.

Q. And that you're saying that this is not your idea?

A. Yes, it wasn't my idea.

* * *

Q. Then why would you sign an application when this is not true?

MS. McANELLY: Objection, form.

A. It was because Huang Lin and them telling me -- they helped me with the visa and they told me to do this and I don't know about this, so I trusted them and I do according to what they said.

*Id.* at p. 49:9-24;

MR. YUEN: …organization called Shanghai Linghai Fishery Economic Trading Company Ltd.?

***

A. I see that.

Q. All right. Did you ever work between August 2007 to August 2010 with the last application for Linghai Fishery Economic Trading Company in Shanghai?

A. No.

Q. So whose idea to put your name on it?

A. Huang Lin.

Q. Is it part of the application for the L visa?

A. It should be.

*Id.* at p. 51:19-25, 52:1-8;

MR. YUEN: But how do you end up providing those documents on the plan that you don't even know?

A. Well, they said that I needed a business plan in relation to my Ll visa application… And it was Huang Lin, the lawyer, and them making this; and Huang Lin did this business plan for me.

*Id.* at p. 55:5-12;

MR. YUEN: So my question to you is: Are you willing to assert attorney-client privilege or you want to just freely disclose what you know? When I asked you the question, did you ever talk to your lawyer about the diagram or the business plan? Do you --
A. No.
Q. Do you willing to talk about that?
A. I'm willing to.

*Id.* at p. 56:16-23;

MR. YUEN: So did your attorney explain to you that that business plan is to comply with the Ll application, L visa application?
A. My attorney didn't -- my attorney did not explain that to me. It was Huang Lin who told me that.

*Id.* at p. 61:23-25, 62:1-3;

MR. YUEN Okay. To apply and comply with the law as an L visa, you will have to show you have a parent company sending you over to the United States. Do you understand that?
***
A. I don't know that.
MR. YUEN: SO why do you include the Shanghai Linghai in your business plan then?
A. It was because I was told by Huang Lin.

*Id.* at p. 62:12-21;

MR.YUEN: But you also testified that you never worked for that Shanghai Linghai company in 2007, '08, '09 or4 '10. Do you know that?
* * *
A. I know that.

26

Q. And in the application package showing that there are transaction between Shanghai Linghai and United States. And I'm showing you this as Exhibit No.9.

Q. And I would like for you to take a look at this signature. Do you recognize the signature of this documents?

* * *

Q. I would like for you to see whether those signature, recognize them or not.

* * *

A. Are you talking about these two signatures?

Q. Yes.

THE INTERPRETER:…"I signed this signature." And the witness was pointing to the second signature on the right and he said: "I'm not sure whether it was signed by Yang Jun or Huang Lin, I'm not sure."

MR.YUEN: Okay. Do you recognize your - - Mr. Zongdao Shao's signature?

A. I can recognize that.

Q. And is it his signature on the right?

A. No.

* * *

Q. So you have never seen this document before other than…

A. I have seen this.

* * *

Q. Okay. So you said the left-hand side is your signature?

A. Yes.

Q. And the right-hand side is not the signature of Mr. Zongdao Shao…

A. Yes.

*Id.* at p. 64:1-25, 65:1-11;

MR. YUEN: Where is the AFI office in Houston, Texas, at that time?

A. At 970 Bunker Hill Road, suite No. 205 – 215 or 205, I've forgot -- Houston, Texas.

Q. Okay. Then why do you not conduct the Linghai business at the American Fishery office instead of subleasing a place at Jun Yang and Lin Yang's office?

* * *

A. It was because at that time at the AFI's office there were a few people who worked there on rotation for AFI and for Linghai company

27

because nobody knew about it apart from me knows about this company. It was for doing non-AFI business for my own business. It was because in order to form Linghai and the salaries of Huang Lin, Marina Ma and myself and Kathie Cheung have to be paid, and we cannot get that paid from AFI because AFI was doing business for Linghai and it could not be paid from the account of--

       \* \* \*

A. It was because in order to form Linghai, the salaries of Huang Lin, Marina Ma, Kathie Cheung and myself has to be paid, and these salary cannot be paid, we cannot get it from AFI. It was because AFI was for Lingpu and it cannot be from the account of Linghai. And Linghai, therefore, had to do its own business in order to make some money.

*Id.* at p. 66:20-25, 67:1-24;

MR. YUEN: Is that the reason why you have a separate office so that you could hide away from the American Fishery people?
A. Yes.

*Id.* at 68:2-5;

MR.YUEN: And who is the third director?
A. Li Jing.
Q. Okay. And did any of these three people knows about what you did with Linghai (USA)?
A. No.
Q. Some of the document relate to Linghai Shanghai, like the bylaws or financial document, how did you get a hand of that?

       \*\*\*

A. They all know that Mr. Zongdao Shao is my uncle. And we've known each other for a long time, I'm saying the relationship with the office and the financial people. They all trusted me because we are -- we are on very good terms. Therefore, when I asked them to give me documents, they would give them to me.
Q. When you ask them for documents, do you tell them that you are using this document for purpose of making an application for L visa with Linghai (USA)?
A. No.

*Id.* at p. 69:1-21;

28

(2) As to AFI's tax returns, which the NHI Defendants seek to use at trial:

MR. YUEN: I'm talking American Fishery, Inc., the corporate income tax return, do you remember filing income tax returns for AFI?
A. Well, for this tax filing, it wasn't done by me, it was Huang Lin and them doing that for me; but so I'm not sure whether they did it or not.
***
A. The accountant was Lee Huang (phonetic), and the name of the CPA firm is Lee Dongliang.
Q. Have you met with the CPA before?
A. I met him once.
Q. Okay. Now, in the income tax return of those year 2005 all the way to, I believe, 2012 - -shows that you are the only director, only shareholder of the American Fishery, Inc . Is that true or not true?
A. It wasn't correct.

*Id.* at p. 72:10-25, 73:1-2;

MR. YUEN: So how do you end up using a CPA or certified public accountant to file income tax returns?
A. As I said earlier, I don't know how to do that so Huang Lin and Yang Jun brought me to the accountant and they told me that I had to file taxes, so that's how I filed the taxes.
Q. …do you feel this is the right thing to do to show that you are the only shareholder and the only director of the American Fishery during those years?
***
A. It's not correct.
Q. Did you ever disclose this information to the 19 directors or shareholders in Shanghai?
A. No.

*Id.* at p. 73:9-24;

(3) As to the price of shrimp, a hotly contested matter in the case:

MR.YUEN: And who determined the price for those shrimp products?
A. It was done by the board of directors of AFI.
Q. You have authority to make decision for price of the shrimp?
A. No.

Q. And do you have authority to negotiate with the NCC about whether or not to sell a container of load of shrimps to NCC?

A. No.

Q. So can you distinguish your duties for American Fishery while you are in the United States?

A. It was to inform the client about the shipment schedule and also to get the shipment into the factory and also retrieving payments for the goods, et cetera.

Q. SO when there is a dispute about nonpayment, you would be assisting to handle and try to resolve that, correct?

A. Yes.

Q. But who make the final decision about any dispute related with a big problem?

A. It would be the board of directors .

Q. In June 2012, did your uncle, Zongdao Shao, came from China to the United States?

***

A. It was to demand the payment of the goods from Yang Jun.

Q. At that time do you remember who were doing the negotiation?

A. My uncle, Mr. Zongdao Shao and Yang Jun.

MR.YUEN: But between the two of them, who made the decision or both? Which one or both make the decision?

A. Yang Jun made the decision.

Q. And do you remember at that meetings what was the resolution of paying those shrimp product that are already shipped to NCC?

***

A. At the time Yang Jun promised that to pay us immediately and agreed that -- and we agreed that Yang Jun would pay us immediately and for the remaining outstanding amount they would give this to  us and also return a portion of the goods back to us.

*Id.* at p. 74:3-25, 75:1-10, 75:16-25, 76:1-3;

MR. YUEN: When they returned the products back to American Fishery, were American Fishery reduce the debt what he owed American Fishery?

A. Yes, it was reduced.

Q. During the time when the shrimp arrived to the United States, have you ever received any complaint from NCC about contamination of shrimp?

A. No.

Q. Have you ever heard about that from Jun Yang or Lin Huang about you undersold the shrimps to other people and not giving the best price to NCC?

A. No.

Q. Mr. Zongdao Shao have mentioned that the shrimp packaging is by hand and sometime it might have a little problem getting the exact weight. Do you recall hearing that?

A. I remember that.

Q. He said you also experienced that that's true statement that sometimes little mistake may happen?

A. Yes.

Q. So when that happened, what is normally the solution of that?

A. For that many years that I stayed in the United States, I have never encountered such problem. From my impression, there was one incident whereby the other side conducted a random sampling and you send me the sampling assessment report. I think it was from Yang Jun or NCC. There was a sampling made regarding how many products were there and its weight, but that happened many years ago. I remember that there was such incident, and at the time it was a small compensation that was made for about 2,000 to US $3,000.

Q. Well, do you remember there was an email where Mr. Zongdao Shao say "I agree this is all true and therefore I agree to pay you about $350,000 compensation?" Do you remember seeing an email like that?

A. I have seen that. It wasn't an email. I think it was a fax.

Q. Okay. But this 350,000 is a little bigger than what you said -- 3- or $4,000.

A. No, the 3,000 I mentioned earlier related to Yang Jun happened many years ago. It wasn't about the 74 container related to this lawsuit. It happened a long time ago when we did business with Yang Jun.

*Id.* at p. 77:2-25, 78:1-22;

MR. YUEN: They are saying that there is a short weight in the shrimp that you sold them that you admitted to pay them back $350,000 as a compensation.

\*\*\*

A. No, in this document, in the top part of this document, it clearly talked about because there was problem with the shrimp being stocked, many shrimps were being stocked, and it never mentioned the quality of the shrimp.

*Id.* at p. 80:1-9;

A. For that 350,000, well, at the time my uncle said that if they would return the 6 million then it would be lowered to 350,000, but there was a precondition that has to be met.

MR. YUEN: And what is that precondition?

A. The precondition

***

A. The precondition was in accordance to the contract Yang Jun and NCC has to return the US$6 million to us immediately.

Q. And so this $350,000 have nothing to do about a meeting that American Fishery, Inc. have done anything wrong, does it?

***

A. Yes, they are not related.

***

Q .. So it had nothing to do with any contamination?

***

A. It's not related.

Q. Is it anything to do with a huge number of short weight?

***

A. No, it's not related.

Q. And is it within your duty to collect the duty for the American Fishery, is it not?

A. Yes.

Q. And that's why you were with Mr. Zongdao Shao on June 2012 when he come to the united States?

A. Yes.

Q. There was allegation about there are contamination of shrimps. When is the first time you heard about this complaint from NCC?

A. It was back in November or December of 2012.

Q. When you heard that, how do you feel that?

A. I was very angry.

Q. Why?

A. Because he already taken my goods for a year and now he said there's contamination with the goods. In my business dealing, I had never heard that someone who took your goods for more than a year and then made a complaint that there's contamination with the goods.

*Id.* at p. 81:8-24, 82: 8-25, 83:1-10.

All of this testimony of Feng Shao goes directly to the heart of the issues in this case, as alleged by the NHI Defendants in their counterclaims. For this reason, AFI needs to present this testimony to the jury and the trial court's order striking the testimony is a sanction – and an abuse of discretion – because it prohibits AFI from presenting its defenses and, in fact, it is a "death penalty" sanction.

**C. The Trial Court's Order Striking the Entire Testimony Was Not Just a "Sanction," It Is a Death Penalty Sanction.**

In its Motion to reconsider striking Feng Shao's deposition, AFI argued that striking the deposition testimony in its entirety amounted to a "death penalty" sanction. This is based on the importance of the testimony to AFI's case. *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (indicating that "death penalty" analysis extends to excluding essential evidence). By striking the entirety of Feng Shao's testimony, the trial court's order amounts to a "death penalty" sanction; however, the trial court failed to consider if lesser sanctions were available or any other aspects of a death penalty sanction. This is also an abuse of discretion.

The legitimate purposes of discovery sanctions are threefold: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Arkla, Inc. v. Harris*, 846 S.W.2d 623, 628 (Tex. App.—Houston [14th Dist.] 1993, no writ); *Smith v. Nguyen*, 855 S.W.2d 263, 267 (Tex. App.—Houston [1st Dist.] 1993, writ denied). All sanctions

imposed must be "just." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

In *TransAmerican*, the Texas Supreme Court created a two-prong analysis to determine if a sanction is just. "First, a direct relationship must exist between the offensive conduct and the sanction imposed." *Id.* This means the sanction must remedy the prejudice caused to the innocent party and punish the actual offender, whether that is the party or its counsel. *Id.* This first prong also contemplates a showing by the moving party that it is unable to prepare for trial without the requested discovery. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex.1992). The second step in determining if a sanction is just is that the sanction must not be excessive. *TransAmerican*, 811 S.W.2d at 917. The punishment must fit the crime.

Here, the trial court's order punishes AFI, in addition to Feng Shao. Not only is the testimony critical to defending against the NHI's Defendants' claims, but by striking Feng Shao's testimony (and denying him the opportunity to defend claims asserted against him), the trial court has left the parties with an "empty chair." Thus, the NHI Defendants can point to Feng Shao as the "guilty" party and avoid paying the amount owed to AFI pursuant to the Agreement between the parties. This is clearly not just.

Trial courts must consider lesser sanctions before using death penalty sanctions because ultimate sanctions violate due process absent a party's flagrant bad faith or counsel's callous disregard for the discovery process. *Id.* at 918. One additional instruction from *TransAmerican* is that, "discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Id.*

Here, as shown above, the trial court's order to strike the deposition testimony of Feng Shao deprives AFI of crucial evidence to defend against the claims of the NHI Defendants. Yet, the trial court did not attempt to impose this "sanction" in a just manner nor was there any attempt to impose a lesser "sanction." AFI suggested alternatives to the trial court before it ruled on the NHI Defendants' motion to strike, but apparently the trial court did not consider those alternatives.

## D. AFI has No Adequate Remedy by Appeal

Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding); *Walker*, 827 S.W.2d at 840. But a party will not have an adequate remedy by appeal (1) when the appellate court would not be able to cure the trial court's discovery error, (2) when the party's

ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error, or (3) when the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 210-11 (Tex.2004) (orig. proceeding); *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex.1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843.

Here, as shown, without the testimony of Feng Shao, AFI will be unable to present many of its defenses to the jury. Important testimony regarding Linghai and other matters will be lost. The trial court's ruling effectively deprives AFI of its ability to defend against the NHI's allegations, and AFI has no adequate remedy by appeal.

## III. CONCLUSION

The trial court has abused its discretion by striking the entire deposition testimony of Feng Shao. As shown, the testimony is crucial to defending the claims asserted by the NHI Defendants, particularly the claims regarding Linghai, but also other claims, such as pricing of the shrimp and customer complaint. Feng Shao is a central character in this case and by striking his deposition testimony, the trial court has also deprived Feng Shao of any defenses. Ultimately, the trial court's ruling leaves an "empty chair," opening up the possibility that the NHI

Defendants will be able to avoid paying for the shrimp product they received simply by pointing to Feng Shao's empty chair.  Because Relator cannot present the important testimony of Feng Shao through other witnesses, Relator is without an adequate remedy by appeal.

Therefore, Relator respectfully requests this court grant its Petition for Writ of Mandamus and reverse the trial court's order striking the deposition testimony of Feng Shao and denying Relator's motion to reconsider the ruling.

## IV.    PRAYER

For all the foregoing reasons, the trial court has abused its discretion in granting the NHI Defendants' motion to strike the deposition testimony of Feng Shao.  Accordingly, Relator prays this Court (a) GRANT Relator's Petition for Writ of Mandamus; (b) REVERSE the trial court's order granting the Defendants' motion to strike, dated March 24, 2015; and (c) REVERSE the trial court's order dated April 2, 2015, denying Plaintiff's Motion to Reconsider Striking the Deposition Testimony of Feng Shao.

Respectfully submitted, this 4th day of April, 2015.

SIEGEL, YUEN & HONORE, P.L.L.C.


By:    */s/ Diane M. Guillerman*
        Xenos Yuen
        State Bar No. 2223250
        xy@yuenlawoffice.com [email]

37

Andrew Gass
State Bar No. 07747800
ag@yuenlawoffice.com [email]
6100 Corporate Drive, Suite 580
Houston, Texas  77036

COUNSEL FOR PLAINTIFF,
AMERICAN FISHERIES, INC.

**VERIFICATION**

THE STATE OF TEXAS          §
                            §
COUNTY OF HARRIS            §

BEFORE ME, the undersigned authority, on this day personally appeared

DIANE GUILLERMAN, the affiant, a person whose identity is known to me.

After I administered an oath to the affiant, affiant testified:

1. "My name is Diane Guillerman. I am over the age of 18, of sound mind, and capable of making this verification. The facts stated in this verification are within my personal knowledge and are true and correct.

2. "I am the attorney for relator. All documents included with the petition for writ of mandamus are true copies."

Further affiant sayeth not.

*/s/  Diane Guillerman*_____
DIANE GUILLERMAN

38

SUBSCRIBED AND SWORN TO BEFORE ME by the said DIANE GUILLERMAN on April 3, 2015.

_____
NOTARY PUBLIC FOR STATE OF TEXAS

[The executed Verification is filed with the Court on this date as a separate document.]

No. _____-CV

IN THE COURT OF APPEALS
FOR THE FIRST OR FOURTEENTH DISTRICT OF TEXAS

IN RE AMERICAN FISHERIES, INC.

Original Proceeding from the 157th Judicial District Court,
Harris County, Texas
Trial Court Cause Nos. 2013-29749
The Honorable Randy Wilson

**APPENDIX LIST TO THE PETITION FOR WRIT OF MANDAMUS**

**List of Documents**

App. Tab 1, Agreement of Cooperation;

App. Tab 2, Plea Agreement in Case No. 13 CR 139, U.S. v. Jun Yang;

App. Tab 3, Government's Position Paper as to Sentencing Factors in Case No. 13 CR 139, U.S. v. Jun Yang;

App. Tab 4, Third-Party Plaintiffs National Honey, Inc. and Jun Yang's Second Amended Petition & Requests for Disclosure and Third Amended Counterclaim of National Honey, Inc. against American Fisheries, Inc.;

App. Tab 5, Deposition testimony excerpts of Zongdao Shao;

App. Tab 6, Deposition testimony excerpts of Lin Huang Yang, dated August 4, 2014;

App. Tab 7, Emergency Motion for Trial Continuance;

App. Tab 8, Commercial Sublease Agreements, dated March 1, 2010 and June 16, 2007;

App. Tab 9, Plaintiff's Original Petition against Feng Shao and Sixth Amended Petition against Defendants National Honey, Lin Huang Yang, and Jun Yang;

App. Tab 10, Deposition testimony of Feng Shao, dated February 13, 2015;

App. Tab 11, Email dated January 17, 2015, from Judge Randy Wilson;

App. Tab 12, Merrill Corporation's Cost Sheet and invoice from Merrill Corporation;

App. Tab 13, Motion to Strike Deposition Testimony of Zong Dao (sic) Shao and Feng Shao and for costs to Attend the Deposition of George Ge and Mark Ma;

App. Tab 14, Plaintiff's Response to Defendants' Motion to Strike and for Costs;

App. Tab 15, Defendants' Response to Plaintiff's Emergency Motion to Reconsider the Court's Order to Strike Feng Shao's Deposition Testimony;

App. Tab A, Order dated March 24, 2015;

App. Tab B, Order Denying Plaintiffs Emergency Motion to Reconsider the Court's Order to Strike Feng Shao's Deposition Testimony, dated April 2, 2015.

## CERTIFICATE OF SERVICE

Pursuant to Tex. R. Civ. P. 21a, this is to certify that a true and correct copy of the foregoing Emergency Motion for Temporary Relief was served by electronic filing upon counsel for the Defendants, M.H. Cersonsky, Cersonsky, Rosen & García, P.C., 1770 St. James Place, Suite 150, Houston, Texas 77056, and on the Respondent, on this the 4th day of April, 2015.

*/s/ Diane Guillerman* ___
Diane Guillerman

## CERTIFICATE OF COMPLIANCE

This Petition for a Writ of Mandamus contains 9,465 words, counted consistent with the Rule of Appellate Procedure 9.4(i)(3).

*/s/ Diane Guillerman* ___
Diane Guillerman